The appellant (Joseph P. Ruzic, Jr., as executor of the estate of Joseph P. Ruzic, deceased) appeals the judgment of the circuit court, entered in a nonjury case in which the court heard ore tenus evidence. The issue is whether the court correctly ruled that a written instrument executed by the appellee (Dorothy H. Ruzic, widow of Joseph P. Ruzic) did not constitute a valid waiver of her right to dissent from her husband's will and to take an elective share of the estate. We reverse and remand.
The appellee, Mrs. Ruzic (the former Dorothy H. Johnson), and the deceased, Joseph P. Ruzic, were divorcees, and they began dating in June 1980. They began to live together in August 1980 and married in 1986. They resided at Mrs. Ruzic's home in Demopolis, Alabama. Mr. Ruzic was retired, and Mrs. Ruzic was employed as a hospital executive. They shared expenses, but did not commingle their funds until 1983. Before he began living with Mrs. Ruzic, Mr. Ruzic owned a house at Lake Serene in Hattiesburg, Mississippi; owned a 1/5 interest in approximately 1900 acres of real estate in Sumter County, Alabama, known as the "Ruzic estate"; and a 1/5 interest in other real property in Sumter County, known as the "Perolio Estate". While they were dating and living together, Mrs. Ruzic accompanied Mr. Ruzic on hunting trips to the Ruzic estate. She visited his house at Lake Serene and knew that it was worth approximately $180,000. Mrs. Ruzic also knew that Mr. Ruzic had an interest in the Perolio estate as well. However, she did not know the precise value of Mr. Ruzic's real property or his net worth.
While they were living together and before their marriage, Mr. Ruzic had expressed some concern to Mrs. Ruzic about recent difficulties in his relationship with his former wife and about "palimony suits." On March 21, 1983, Mrs. Ruzic (then Dorothy H. Johnson) executed an instrument that she prepared with the assistance of a public accountant; that instrument read as follows:
"TO WHOM IT MAY CONCERN:
 "I, Dorothy H. Johnson, do hereby state and declare that if at anytime during the relationship and marriage of myself and Joseph P. Ruzic, Sr., it is incompatible it will be dissolved immediately.
 "I, Dorothy H. Johnson, do not wish anything out of this dissolvement or in the event of the death of Joseph P. Ruzic, Sr., except what I brought into the relationship and marriage and one-half of what we have accumulated from the time of marriage.
"s/Dorothy H. Johnson
Dorothy H. Johnson
Date: 3-21-83
Witness s/Sue N. Manning
Witness s/Catherine Ferguson
"s/Sue N. Manning
Notary Public
My commission expires 6-24-86"
Mrs. Ruzic presented the instrument to Mr. Ruzic, "thinking it would make him feel better." Mr. Ruzic had not requested that Mrs. Ruzic execute any kind of antenuptial agreement. Mr. Ruzic kept the instrument in his safe. The combination to the safe was kept in a safe deposit box, to which only Mr. Ruzic and his son, Joseph P. Ruzic, Jr., had a key. The matter of the instrument was not discussed again, nor did Mr. Ruzic draft and execute a similar instrument purporting to waive any interest in Mrs. Ruzic's estate.
In April 1983 (approximately two weeks after Mrs. Ruzic gave the instrument to Mr. Ruzic), they moved to his house at Lake Serene. Mrs. Ruzic had previously applied for a job at a hospital in Hattiesburg, Mississippi, and she began working there. Mrs. Ruzic paid for certain improvements that were made to the house with some of the proceeds from the sale of her house in Demopolis, Alabama. She also purchased a tractor and some equipment that were used on Mr. Ruzic's property in Sumter County, Alabama.
In 1985, they moved to Baton Rouge, Louisiana, because Mrs. Ruzic was transferred *Page 74 
by her employer. In May 1986, Mrs. Ruzic resigned from her job, at Mr. Ruzic's request, and they were married on May 28, 1986.
In March 1987, Mr. Ruzic was hospitalized. On March 24, 1987, Mr. Ruzic executed his last will and testament; he died just three days later. The will was admitted to probate, and Mrs. Ruzic filed a petition for an elective share, homestead allowance, exempt property, and family allowance. Although the terms of the will indicated that Mr. Ruzic had made provision for Mrs. Ruzic during his lifetime by maintaining a joint bank account and by naming her as the beneficiary of certain life insurance, at the time of his death the joint account had a balance of only $42.18, and no life insurance policy naming Mrs. Ruzic as the beneficiary was discovered. Pursuant to the will, Mrs. Ruzic did receive a life estate in the home at Lake Serene, which was debt free, and Mr. Ruzic's personal property, including jewelry, furniture, and automobiles. The rest of his estate was willed to his children, who were all adults.
At trial, the executor claimed that the instrument executed by Mrs. Ruzic on March 21, 1983, constituted a waiver of Mrs. Ruzic's right to dissent from the will or to take an elective share of her husband's estate. The trial court, without a jury, ruled that the instrument "did not constitute a waiver by the surviving spouse of her right to dissent or take an elective share of her deceased husband's estate," and specifically held that "this instrument was not sufficient, in law, to bar the surviving spouse from exercising her rights granted by theCode of Alabama." The court ordered the executor to produce a complete inventory and statement of assets and liabilities of the estate so that the value of the wife's interest could be calculated. The executor appealed.
The executor argues, inter alia, that the trial court erred in ruling that the instrument did not constitute a waiver of Mrs. Ruzic's right to dissent or to take an elective share of the estate and that it erred in ruling that the instrument was not sufficient "in law" to bar Mrs. Ruzic from exercising her rights under the Code. The executor argues that Mrs. Ruzic had a full and fair disclosure of Mr. Ruzic's assets and real estate holdings before executing the alleged waiver; that Mrs. Ruzic had such education and experience as to understand the consequences of her actions; and that Mr. Ruzic relied on the instrument as an inducement to marriage.
Mrs. Ruzic argues that the executor has failed to show that the consideration for the waiver was fair, just, and equitable from her point of view or that the agreement was freely and voluntarily entered into with competent independent advice and with full knowledge of her interest in the estate and its approximate value.
A surviving spouse may waive the right of election, homestead allowance, exempt property, and family allowance under Code 1975, § 43-8-72, which provides:
 "The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or a waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of 'all rights' (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead allowance, exempt property and family allowance by each spouse in the property of the other at death and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement."
Under the statute, a valid waiver must meet three requirements: (1) it must be in the form of a written contract or agreement; (2) it must be signed by the party waiving the right; and (3) there must have been a fair disclosure. *Page 75 
This Court has recognized "that an antenuptial agreement of one party to release rights and interests in the estate of the other party in consideration of marriage or supported by other valuable consideration is enforceable in equity." Such contracts are scrutinized by the courts to determine their justice and reasonableness. Allison v. Stevens, 269 Ala. 288,291, 112 So.2d 451 (1959). By denying that a spouse has a share in the estate, the spouse or the estate asserting the agreement has the burden of showing that the consideration was adequate and that the entire transaction was fair, just, and equitable from the point of view of the other spouse or that the spouse who made the agreement did so freely and voluntarily with competent independent advice and full knowledge of his or her interest in the estate and its approximate value. Id.; Barnhillv. Barnhill, 386 So.2d 749 (Ala.Civ.App. 1980), cert. denied,386 So.2d 752 (Ala. 1980). Thus, Allison requires the appellant in this case to prove either: (1) that Mrs. Ruzic received adequate consideration, and that the transaction was fair from her point of view, or (2) that Mrs. Ruzic entered into the agreement with competent independent advice and with full knowledge of her interest in the estate and the approximate value thereof.
It is well established that marriage may be adequate consideration for an antenuptial agreement. McDonald v.McDonald, 215 Ala. 179, 110 So. 291 (1926); Barnhill, supra.
Mrs. Ruzic's testimony indicates that, prior to their marriage, Mr. Ruzic was concerned with palimony suits and with his problems with his ex-wife. Mrs. Ruzic testified:
 "Q. You had started to go into explaining what brought about your signing this document.
 "A. There was a lot of publicity about palimony suits, and he was having some trouble with his ex-wife off and on. I had it prepared thinking it would make him feel better. I had it prepared and took it to him as a proposal and asked him if he didn't think we both needed one."
The evidence shows that it was not until after Mr. Ruzic had received this document that Mr. Ruzic and Mrs. Ruzic began to commingle their funds in a joint bank account; that occurred when they moved to Hattiesburg, Mississippi. It appears that the agreement was supported by adequate consideration, although the Ruzics were not married until 1986.
Mrs. Ruzic testified that she contacted Sue Manning, a public accountant, and had her prepare the document. Mrs. Ruzic testified:
 "Q. Did you inform Joseph P. Ruzic that you were going to Ms. Manning's office on that day?
"A. No.
 "Q. Did you go to Ms. Manning's office for any other purpose than the preparation of this document?
"A. No.
 "Q. So, the sole purpose for your going to Ms. Manning's office on that day was the preparation of this document?
"A. Yes.
". . . .
 "Q. So that getting away from the exact wording of the document, the intent behind this document and the basic wording of this document came from you; correct?
"A. She helped me with it.
 "Q. But you told her what you wanted to say, and she helped you with the wording; is that what you mean?
"A. Right.
". . . .
"Q. You signed it as Dorothy H. Johnson; correct?
"A. Correct."
The evidence shows that Mrs. Ruzic essentially drafted the document with the assistance of a public accountant. The fact that she did not consult a lawyer is immaterial in this case, because she wrote the document to reflect her intent. She must have considered the terms to be fair and reasonable, because she wrote them and signed her name to the document. She specifically stated, "I do not wish anything out of this dissolvement or in the event of the death of Joseph P. Ruzic, Sr." Although *Page 76 
this document was drafted without the assistance of a lawyer, Mrs. Ruzic's intent was clearly stated in the document. Mrs. Ruzic had the document witnessed and notarized, which indicates that she considered the matter seriously.
The evidence shows that Mrs. Ruzic had visited the Ruzic estate and the Lake Serene property with Mr. Ruzic and that she knew that Mr. Ruzic owned an interest in those properties, as well as in the Perolio estate. She may have not known the precise number of acres he owned, but she knew that he owned an interest in these properties. Mrs. Ruzic testified:
 "Q. So, you understood the Perolio estate in 1981 or thereabouts, that he had an ownership interest in it.
"A. Right.
 "Q. You understood he also had an ownership interest in the Ruzic estate.
"A. Right.
 "Q. You were well aware of his ownership of the Lake Serene property because you stayed there.
"A. Yes.
 "Q. Prior to April of 1983 or March of 1983 when this document was prepared, you basically knew about his ownership interest in all three of those pieces of property, didn't you?
"A. Yes."
Mrs. Ruzic testified that she knew that the Lake Serene property was worth approximately $180,000. Mrs. Ruzic may not have known Mr. Ruzic's net worth to the dollar, but she clearly knew, before she executed the document in 1983, that he owned a substantial interest in real estate and other property.
We think it is significant in this case that Mr. Ruzic kept the document locked in his safe. The combination to the safe was kept in a safe deposit box, to which only Mr. Ruzic and his son had a key. Apparently, Mr. Ruzic did not disregard the document, because he kept it in his safe with other valuable items, which included stock certificates and insurance papers. The evidence requires a finding that Mr. Ruzic relied on the document as at least partial inducement for a subsequent marriage.
Therefore, we conclude that the appellant's burden of proof under Allison v. Stevens, supra, has been met and that the requirements of Code 1975, § 43-8-72, for a valid waiver have been satisfied. The trial court is instructed to distribute the assets of the estate in a manner consistent with this opinion.
The judgment is reversed, and the case is remanded with instructions.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and ALMON, HOUSTON and STEAGALL, JJ., concur.
MADDOX, JONES and SHORES, JJ., dissent, with opinion by JONES, J.
ADAMS, J., dissents.