Miles Carl Dutton and Patricia Black were married in 1992. Before the marriage, however, Mr. Dutton insisted that Ms. Black sign an antenuptial agreement. This agreement contained a provision relinquishing Ms. Black's rights to Mr. Dutton's estate. In addition, the agreement contained the following paragraph:
 "9. The parties herein acknowledge a desire on the part of the Husband, and a need on the part of the Wife, that upon the event of the Husband's death, satisfactory housing accommodations and reliable transportation will be available to the Wife. As such, it is agreed between the parties, that as additional consideration for the execution of this Agreement, within six (6) months of the solemnization of the marriage:
 "A. the Husband will purchase a house, at a price not to exceed $35,000.00, nor to be less than $30,000.00, with title thereto to be held jointly with right of survivorship by the Husband and Wife. . . .
 "B. the Husband shall purchase for or otherwise provide to the Wife a dependable automobile not more than five (5) model years old, ownership to be held by and solely in the name of the Wife, said automobile being her property forevermore."
After Mr. Dutton's death, Mr. Dutton's daughter, Janet Lemaster, filed in the probate court for letters of administration. Once she was appointed as administratrix, she had the administration of the estate removed to the circuit court. During this period of time, Patricia Black Dutton (the "widow") continued to reside in Mr. Dutton's house.
The administratrix filed a motion requesting that the trial court require the widow to show cause why the widow was "retaining the real estate, personal property and motor home which are assets of the estate." This motion also requested that the trial court order the widow "to turn over any and all assets of the estate . . . and to remove herself from the real estate." In response, the widow filed a "Petition for Removal of Administratrix," a "Motion for Removal to Probate Court," and an "Answer to the Motion of the Administratrix." In these filings, the widow claimed that the antenuptial agreement was unenforceable on the grounds of failure of consideration and Mr. Dutton's failure to fulfill his promises under the agreement.
Upon agreement of the parties, the trial court held a hearing on the validity and enforceability of the antenuptial agreement. After consideration of the ore tenus evidence, the trial court determined that the agreement was invalid and unenforceable. The administratrix appeals. We reverse and remand.
When a trial court bases its decision on ore tenus evidence, "the findings of [that] court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust." Tibbs v. Anderson, 580 So.2d 1337 (Ala. 1991) (citingKnox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989)). However, that presumption of correctness does not extend to the application of the law to the facts. Ex parte Board of ZoningAdjustment of City of Mobile, 636 So.2d 415, 417 (Ala. 1994). Despite the presumption of correctness afforded the trial court's factual determinations, in this case the facts as they appear in the record clearly show that one of the trial court's findings of fact is plainly in error. In addition, this court concludes that the trial court erred in applying the law concerning antenuptial agreements to the facts of this case.
As a general rule, antenuptial agreements are valid and enforceable under Alabama law. Barnhill v. Barnhill,386 So.2d 749, 751 (Ala.Civ.App.), cert. denied, 386 So.2d 752
(Ala. 1980). However, "[b]ecause of the confidential relationship of the two parties, such contracts are scrutinized by the courts to determine their justice and fairness." Allisonv. Stevens, 269 Ala. 288, 291, 112 So.2d 451, 453 (1959). Antenuptial agreements must satisfy one of two tests to be considered valid. Allison, 269 Ala. at 291, 112 So.2d at 453;Barnhill, 386 So.2d at 751. *Page 1363 
A party seeking to enforce an antenuptial agreement must prove either:
 "that the consideration was adequate and that the entire transaction was fair, just and equitable from the other party's point of view or that the agreement was freely and voluntarily entered into by the [other party] with competent independent advice and full knowledge of [that party's] interest in the estate and its approximate value."
Barnhill, 386 So.2d at 751 (citing Allison, 269 Ala. at 291,112 So.2d at 453) (emphasis added). As applied by this court in the cases since Barnhill, the elements of the second test are considered as proof of the overall fairness required by test one. See Barnhill, at 752; Woolwine v. Woolwine,519 So.2d 1347, 1350 (Ala.Civ.App. 1987). However, this court has required only that the party against whom the agreement is being enforced have a general knowledge, not a full knowledge, of the other's estate. See Barnhill, 386 So.2d at 752;Woolwine, 519 So.2d at 1350.
The widow argues in her brief that the Alabama Supreme Court modified the "general knowledge" requirement and reinstated the "full knowledge" standard in its opinion in Ex parte Williams,617 So.2d 1032 (Ala. 1992). This court disagrees.
In Williams, the supreme court reversed this court's affirmance of a summary judgment holding an antenuptial agreement valid. The wife argued on appeal that the trial court should not have entered the summary judgment (1) because the husband had not complied with her discovery requests, which she argued were crucial to her case, and (2) because she claimed genuine issues of material fact existed concerning the husband's disclosure of his assets and the execution of the antenuptial agreement. Williams, 617 So.2d at 1034. In its opinion, the supreme court noted that it had reviewed the record and had determined that the testimony created genuine issues of material fact about "whether there was a full disclosure of the value of the husband's estate." Id. at 1035.
The mere fact that the supreme court used the term "full disclosure" does not in and of itself merit the assumption that the supreme court has changed the law on antenuptial agreements. If indeed the supreme court intended to change the law, it would have made the change clear. The supreme court reversed the summary judgment in Williams because material facts were disputed and that dispute created a genuine issue concerning whether either of the Barnhill tests had been met. Therefore, this court concludes that Ex parte Williams has not altered the long-standing law on antenuptial agreements.
In addition, this court notes that the waiver of a surviving spouse's rights is governed by Ala. Code 1975, § 43-8-72. The statute requires that such a waiver be in written form and signed by the waiving party after fair disclosure. Ala. Code 1975, § 43-8-72; Ruzic v. Ruzic, 549 So.2d 72, 74 (Ala. 1989). In Ruzic, our supreme court held that both the requirement of fair disclosure under § 43-8-72 and the requirement of full disclosure under the Barnhill test were met where the wife knew the husband had substantial interests in real estate but did not know his exact net worth. Because the waiver contained in the antenuptial agreement at issue in this case is in written form and was signed by the widow, it meets the first two requirements of the statute. As the following discussion illustrates, the facts in the record show that the third requirement, that of fair disclosure, was also met.
In its judgment, the trial court made two important findings of fact. First, from the testimony at the hearing, the trial court concluded that the widow had not seen Mr. Dutton's financial statement before she signed the antenuptial agreement. The trial court also found that the widow did not have knowledge of Mr. Dutton's estate or its approximate value. These facts, according to the trial court, were evidence that the agreement did not satisfy the second test set out inBarnhill.
In addition, the trial court applied the first test enunciated in Barnhill. After reviewing the facts, it determined that the antenuptial agreement was inequitable because Mr. Dutton's net worth exceeded $200,000, while the widow's net worth was slightly over $5,000. On this basis, the trial court *Page 1364 
held that the antenuptial agreement was void and unenforceable under the first test as well.
This court concludes that the trial court's second finding of fact, that concerning the widow's knowledge of the value of Mr. Dutton's estate, was not supported by the evidence contained in the record. In fact, the testimony indicated that the widow did know the general extent of Mr. Dutton's estate. She testified that she had lived with Mr. Dutton a year before they were married and that she was aware that he owned a house, a business, three vehicles, some real estate, and various items of personal property. She also testified that she knew he received income in the form of a salary from his business, Social Security benefits and disability payments, and rent from a mobile home lot.
Despite the trial court's determination that the widow had not seen Mr. Dutton's financial statement before she signed the antenuptial agreement, her testimony alone clearly indicates that she had at least a general knowledge of Mr. Dutton's estate and its approximate value. This general knowledge satisfies the second Barnhill test. See Barnhill, 386 So.2d at 752; Woolwine, 519 So.2d at 1350. Therefore, the trial court's finding that the widow lacked knowledge of the value of Mr. Dutton's estate is not supported by the evidence. In addition, other facts in the record indicate that the trial court's judgment was not supported by the evidence.
The widow revealed that she refused to sign the original agreement submitted to her and her attorney. She stated that her attorney had recommended that the provisions of paragraph 9 be added before she signed the agreement. The fact that she was reluctant to sign the agreement until provisions were made for her living arrangements in the event of Mr. Dutton's death suggests that she knew what she was relinquishing in the agreement. See Barnhill, 386 So.2d at 752.
Finally, the trial court erred in applying the law on antenuptial agreements to the facts before it when it held, based upon the disparity of the parties' net worths, that the antenuptial agreement was unfair and inequitable. As this court stated in Woolwine, the fairness of an antenuptial agreement is not to be judged based upon a comparison of what the spouse takes under the agreement with what he or she would have taken without the agreement. Woolwine, 519 So.2d at 1350. Likewise, a court should not concern itself with the disparity in income between parties to an antenuptial agreement in the absence of fraud, duress, or other culpable conduct on the part of one of the parties. As noted above, the widow was aware of what she was relinquishing, and she made certain that she would be provided for in some way in the event of Mr. Dutton's death. Typically, the reason parties enter into antenuptial agreements is because they have vastly different incomes and assets that they wish to protect in the case of divorce or death. The very impetus behind the creation of such agreements should not be a reason to set them aside as inequitable.
Although this court has concluded that the trial court incorrectly held that the antenuptial agreement was invalid under the tests set out in Barnhill, an issue concerning that agreement remains to be addressed. Initially, the widow requested that the court set aside the agreement on the grounds of failure of consideration and breach of contract. The trial court failed to address those issues in its judgment. Because a decision on these issues would involve questions of fact to be resolved by the trial court, we remand this case for further proceedings on these issues.
Before discussing the issues to be considered on remand, we would like to briefly address the evidentiary issues raised by the administratrix. The administratrix raises the trial court's exclusion of proffered testimony concerning Mr. Dutton's refusal to marry the widow without an executed antenuptial agreement and his intent to substitute a motor home for the house and car referred to in the antenuptial agreement. The trial court excluded the testimony on the grounds that it was inadmissible hearsay, despite the administratrix's contention that the testimony fell within certain exceptions to the hearsay rule. In her brief, the administratrix correctly argues that the proffered testimony fell under the "statement of one's *Page 1365 
own intent" exception. C. Gamble, McElroy's Alabama Evidence § 262.01 (4th ed. 1991); see Ala.R.Evid. 803(3). However, she is incorrect in arguing that the statements were admissible because they were "statements made in making, modifying, performing, or terminating a contract," which are excluded from the definition of hearsay. McElroy's, supra, at § 272.01; see
Ala.R.Evid. 801.
The testimony proffered by the administratrix was improperly excluded as hearsay. However, the trial court, if it does decide that conducting another hearing is necessary,[1] need not admit the testimony despite its admissibility under the hearsay exceptions. Because this court has held that the antenuptial agreement is valid, any testimony that Mr. Dutton would not marry the widow unless she signed an antenuptial agreement, which goes to the issue of consideration, is unnecessary on remand. In addition, as will be discussed later in this opinion, any testimony concerning an oral modification of the antenuptial agreement is inadmissible as irrelevant because that issue is foreclosed on remand.
For the purposes of remand, the trial court should consider whether the widow's contention that Mr. Dutton's failure to perform the promises contained in the antenuptial agreement, if proven, entitles her to some form of relief. A party to an antenuptial agreement has a right to damages for the other party's breach of the agreement. See 41 Am.Jur.2d Husband andWife § 293 (1968). The trial court need not consider equitable remedies in its decision on the issues in this case because, under Alabama's survival statute, an action in contract against a deceased individual may be maintained against his or her personal representative, but only "[i]n all proceedings not of an equitable nature." Ala. Code 1975, § 6-5-462. In the interest of judicial economy and to further assist the trial court in making the decisions required on remand, we will briefly discuss the legal doctrines applicable to these questions. Whether a breach has occurred is a question of fact for the trial court to resolve, David Lee Boykin Family Trust v.Boykin, 661 So.2d 245, 251 (Ala.Civ.App. 1995) (quotingJohnson v. Jagermoore-Estes Properties, 456 So.2d 1072, 1075
(Ala. 1984)); therefore, this court's discussion of the applicable law will in no way involve weighing the facts presented by the parties below.
First, we would like to address the administratrix's argument that the promise to purchase the widow a house and car was modified, as evidenced by statements made by Mr. Dutton concerning the purchase of a motor home. In many typical contract actions, an oral modification would be susceptible to proof by the party asserting its existence. See generally, 17A C.J.S. Contracts § 377 (1963). However, the antenuptial agreement, which is an "agreement . . . made upon consideration of marriage," falls within the Statute of Frauds and must be in writing. Ala. Code 1975, § 8-9-2(4). In addition, the waiver of widow's rights, here contained in the antenuptial agreement, must be in writing. Ala. Code 1975, § 43-8-72. When a contract falls within the Statute of Frauds and is required to be in writing, an oral modification that goes to the substance of the agreement has no effect. Cotter v. Harris, 622 So.2d 880
(Ala. 1992) (quoting Cammorata v. Woodruff, 445 So.2d 867, 872
(Ala. 1983)).
This court is aware of Campbell v. Campbell, 371 So.2d 55
(Ala.Civ.App. 1979), in which the court held that the Statute of Frauds would not serve as a defense to a claim based on an oral antenuptial agreement. However, that particular case involved an unusual situation: the parties agreed about the substance of the oral agreement. Campbell, 371 So.2d at 60. Because the purpose of the Statute of Frauds, to prevent fraud and perjury in contract actions, was not endangered, the court reasoned that the statute need not be applied. Id. Before this court, the widow disputes *Page 1366 
the alleged oral modification of the antenuptial agreement, and the purpose of the Statute of Frauds would be served by its application in this case. Accordingly, on remand, the trial court need not concern itself with the issue of modification of the antenuptial agreement.
Second, we would like to address the widow's defense of failure of consideration. Generally, the term "failure of consideration" is described as "the neglect, refusal and failure of one of the contracting parties to do, perform, or furnish, after making and entering into the contract, the consideration in substance and in fact agreed on." 17 C.J.S.Contracts § 129 (1963). In addition, a failure of consideration is "predicated on the happening of events which materially change the rights of the parties, which events were not within their contemplation at the time of the execution of the contract." Id.
Typically, a total failure of consideration is used as an excuse for nonperformance of a contract. 17A Am.Jur.2dContracts § 670 (1991). In this particular case, although she does not specify whether the failure of consideration she alleges is total or partial, the widow cannot allege a total failure because she and Mr. Dutton were married, and marriage itself is sufficient consideration for an antenuptial agreement. See Woolwine v. Woolwine, 519 So.2d 1347, 1349
(Ala.Civ.App. 1987). However, where an agreement recites additional consideration for a relinquishment of property rights, as does this agreement, and that recited consideration totally fails, some authority exists for the proposition that the party asserting the defense of failure of consideration may be released from the agreement and may assert those property rights. 41 Am.Jur.2d Husband and Wife § 293 (1968). The antenuptial agreement at issue here recited additional consideration in the form of a house and a car to be purchased for the widow; according to the evidence in the record, the widow has at least received physical possession of a car. If that fact is true, then the enumerated consideration has not totally failed, and the widow cannot be released from the agreement.
In effect, a failure of consideration is the failure to perform a promise contained in the agreement, and it is much like a breach. 17A Am.Jur.2d Contracts § 670 (1991). Because "a partial failure of consideration [also] imports a breach of contract," 17A Am.Jur.2d Contracts § 671 (1991), the widow can proceed with her action for breach of the antenuptial agreement. The trial court should apply traditional rules of contract law in determining whether Mr. Dutton breached the antenuptial agreement, whether the administratrix has any defenses to the breach, and whether the widow should receive damages as a result of the breach.
A breach of contract is defined as a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract." Black's Law Dictionary 188 (6th ed. 1990); seealso 17A Am.Jur.2d Contracts § 716 (1991). To establish that a breach of contract occurred, a "claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) [her] own performance under the contract, (3) the defendant's nonperformance, and (4) damage." Southern MedicalHealth Systems, Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) (citations omitted). Because we have determined that the antenuptial agreement between Mr. Dutton and his widow is valid and enforceable, the first prong of this test is already satisfied. On remand, the trial court should consider whether the widow (a) has proven her own performance under the contract, (b) has shown that Mr. Dutton failed to perform his obligations under the contract, and (c) has demonstrated damage or harm as a result of the failure of performance.
If the widow proves on remand that Mr. Dutton breached the antenuptial agreement, the trial court may award damages. The rule in Alabama is that damages for breach of contract "should return the injured party to the position [she] would have been in had the contract been fully performed." Garrett v. Sun PlazaDevelopment Co., 580 So.2d 1317, 1320 (Ala. 1991) (citations omitted). In no event, however, should the injured party be placed in a better position than she would have been had the contract been performed. Id. (citation omitted). *Page 1367 
Accordingly, the judgment of the trial court is reversed and this cause is remanded for additional proceedings on whether Mr. Dutton's failure to purchase a house and a car for the widow resulted in a breach of the antenuptial agreement and, if so, whether the widow is entitled to damages as a result of that breach.
REVERSED AND REMANDED.
THIGPEN, J., concurs.
YATES, J., concurs in the result.
MONROE, J., concurs in the result only.
ROBERTSON, P.J., dissents.
[1] We note that any hearing on remand would be governed by the new Alabama Rules of Evidence. Rule 1103, Ala.R.Evid., states: "These rules shall apply if the proceeding begins on or after January 1, 1996." (Emphasis added.) The advisory committee notes indicate that "[t]he commencement of an action is not the commencement of a 'proceeding.' " Rule 1103, Ala.R.Evid. (Court Comment).