On November 14, 2005, Henry Tyler ("the husband") filed a complaint for a divorce from Ann Hall Tyler ("the wife"). In his complaint, the husband alleged that no children had been born of the parties' marriage and that the issues of property division and alimony had been addressed in an antenuptial agreement. Attached to his complaint, the husband submitted a copy of an antenuptial agreement entered into by the parties on February 12, 2001. The wife answered and counterclaimed for a divorce. She later amended her counter-claim to challenge the validity of the February 12, 2001, antenuptial agreement.
The trial court conducted an ore tenus hearing on, among other things, the issue of the validity of the antenuptial agreement. On July 17, 2006, the trial court entered an order in which it, among other things, determined that the February 12, 2001, antenuptial agreement was valid and enforceable. On November 8, 2006, the trial court entered a final judgment divorcing the parties and disposing of the parties' property pursuant to the terms of the February 12, 2001, antenuptial agreement. The wife filed a post-judgment motion, which the trial court denied. The wife timely appealed. *Page 425 
The record indicates that the parties dated for a number of months before becoming engaged. While they were dating, the parties discussed the possibility of marrying, and during at least one such conversation, the husband indicated that he wanted the parties to enter into an antenuptial agreement.
The parties later became engaged, and they scheduled their wedding for February 14, 2001. On February 12, 2001, the husband drove the wife to his attorney's office. The wife testified that since initially discussing a general desire to enter into an antenuptial agreement, the parties had not again discussed the matter. The wife stated that she did not realize where the parties were going before the husband took her to the attorney's office. The husband disputed that testimony, stating that he had informed the wife of the appointment with the attorney and that she knew they were going to his attorney's office on February 12, 2001. The husband further testified that the parties had completed financial-disclosure forms together in early February 2001 for the purpose of drafting the antenuptial agreement.
It is undisputed that the husband's attorney drafted the antenuptial agreement and that the husband's attorney arranged for another attorney to be present to represent the wife. Both attorneys were present when the parties arrived at the office of the husband's attorney. The wife went with her attorney into a conference room to discuss the terms of the antenuptial agreement.
The wife's attorney testified that he did not remember the specific events of February 12, 2001. However, he testified that it was his practice to review an antenuptial agreement before its execution and to meet with the spouse he was representing to review the terms of the agreement. He believed that he had received a copy of and had reviewed the antenuptial agreement at least one day before the February 12, 2001, meeting. The wife's attorney believed that the February 12, 2001, antenuptial agreement was the worst he had ever seen in regard to the manner in which it favored the husband over the wife. The wife's attorney testified that he recalled that his intention was to advise the wife not to sign the antenuptial agreement.
The wife testified that when she arrived at the husband's attorney's office and received the antenuptial agreement, she was so nervous and anxious that her heart raced and she had difficulty with her vision. According to the wife, her attorney read the antenuptial agreement to her and they discussed her concerns about its terms and effect. The wife stated that, at one point, her attorney left the room to attempt to negotiate terms more favorable to her but that the husband refused to negotiate. The wife acknowledged that her attorney advised her against signing the antenuptial agreement, and she admitted that she could have refused to sign the agreement. The wife stated that she signed the agreement despite her anxiety about it.
The wife testified that she did not believe that the antenuptial agreement encompassed the plans the parties had made for their married life together. However, it does not appear from the record that the parties discussed the possible terms of an antenuptial agreement when they were making plans for their marriage. The husband, who has a substantial individual estate, testified that he would not have married the wife absent the execution of an antenuptial agreement. After the parties signed the February 12, 2001, antenuptial agreement, they were married as scheduled on February 14, 2001. The parties separated in October 2005. *Page 426 
On appeal, the wife argues that the trial court erred in determining that the antenuptial agreement was valid and enforceable. It is well settled that antenuptial agreements are enforceable in Alabama. Ex parte Walters,580 So.2d 1352 (Ala. 1991); Brown v. Brown, [Ms. 2050748, July 27, 2007] ___ So.2d ___ (Ala.Civ.App. 2007); and Barnhill v.Barnhill, 386 So.2d 749 (Ala.Civ.App. 1980).
This court has explained the circumstances in which an antenuptial agreement may be enforced as follows:
 "An ante-nuptial agreement will be held valid as just and reasonable if the [proponent of the antenuptial agreement] is able to show that certain conditions have been met. The husband, in this instance, has the burden to show that the consideration was adequate and that the entire transaction was fair, just and equitable from the wife's point of view or
that the agreement was freely and voluntarily entered into by the wife with competent independent advice and full knowledge of her interest in the estate and its approximate value. Allison [v. Stevens, 269 Ala. 288, 112 So.2d 451 (1959)]. Meeting the requirements of either of the above tests is sufficient to give effect to an antenuptial agreement."
Barnhill v. Barnhill, 386 So.2d at 751 (emphasis added). An antenuptial agreement must satisfy at least one of the two tests discussed in Barnhill v. Barnhill in order to be determined to be valid and enforceable. Brown v.Brown, supra; Lemaster v. Dutton,694 So.2d 1360, 1363 (Ala.Civ.App. 1996); Woolwine v. Woolwine,519 So.2d 1347, 1349 (Ala.Civ.App. 1987); and Barnhill v.Barnhill, supra. However, as has been noted by this court, "the elements of the second test are considered as proof of the overall fairness required by" the first test. Brown v.Brown, ___ So.2d at ___; see also Lemaster v.Dutton, supra.
In Barnhill v. Barnhill, supra, the husband's attorney drafted the antenuptial agreement and advised the wife concerning its terms and effects. The evidence indicated that the wife had a general knowledge of the extent of the husband's estate and that "the wife knew what the effect of the agreement would be and was not happy with it." 386 So.2d at 751. However, the wife signed the agreement when the husband informed her he would not marry her if she did not sign. Based on that evidence, this court affirmed the trial court's judgment enforcing the antenuptial agreement, concluding that the evidence pertaining to whether the antenuptial agreement was freely and voluntarily entered into by the wife was also evidence that the agreement was "fair, just and equitable from the wife's point of view." Barnhill v. Barnhill,386 So.2d at 752.
In Ex parte Walters, supra, the wife lived with the husband for six months before she signed an antenuptial agreement; she had had the agreement for approximately one month before she decided to sign it. During that month in which she had the antenuptial agreement, the wife elected not to seek independent legal advice. The trial court upheld the validity and enforceability of the antenuptial agreement, and this court affirmed that determination. Walters v. Walters,580 So.2d 1350 (Ala.Civ.App. 1990). Our supreme court affirmed this court's judgment. In reaching its holding, the supreme court concluded that evidence indicated that the wife had had the opportunity to obtain legal advice and to "form an opinion" regarding the extent of the husband's assets. Ex parteWalters, 580 So.2d at 1354.
In Brown v. Brown, supra, the wife argued that the parties' antenuptial agreement should not be enforced because she *Page 427 
had failed to read the agreement and her attorney was not available to advise her concerning the agreement, which she signed the day before she married the husband. The wife also argued that the atmosphere in which the husband had asked her to sign the agreement was coercive and that he did not fully disclose his assets in the antenuptial agreement. The trial court determined the antenuptial agreement to be valid and enforceable, and this court affirmed. This court noted that the wife's failure to obtain legal advice, while regrettable, was not alone sufficient to negate the validity of the agreement she willingly signed. The court also concluded that the wife had a general knowledge of the substantial nature of the husband's estate and, therefore, that she had a general knowledge of the rights she was relinquishing. ___ So.2d at ___. This court also rejected the wife's argument that the husband's presenting her with the antenuptial agreement the day before the wedding was coercive; in doing so, this court cited the ore tenus rule and concluded that the trial court "must have determined that the atmosphere surrounding the execution of the antenuptial agreement . . . was not so coercive as to warrant finding that the antenuptial agreement was unenforceable." Brown v. Brown, ___ So.2d at ___.
In reaching its holding in Brown v. Brown, supra, this court distinguished the facts of that case from those ofRoberts v. Roberts, 802 So.2d 230 (Ala.Civ.App. 2001). In Roberts v. Roberts, the husband presented the wife with an antenuptial agreement approximately one month before the parties were scheduled to marry. The wife did not agree with the terms of the antenuptial agreement, and she did not sign the agreement. For reasons not disclosed in the record, the parties' wedding was postponed for several months. The day before the rescheduled wedding, the husband presented the wife with a document entitled "Preliminary Agreement," which provided that the parties would, within 30 days of their marriage, execute the original antenuptial agreement and that, if they failed to do so, the original antenuptial agreement would be enforceable. The wife signed the preliminary agreement and the parties married. The husband never presented the wife with a copy of the antenuptial agreement referred to in the preliminary agreement to sign. The trial court held the antenuptial agreement to be invalid. This court, noting that appellate courts must presume that the trial court made those findings necessary to support its judgment, affirmed. This court concluded that the evidence supported a finding that the wife had had little time between receiving the antenuptial agreement and the wedding to consult an attorney and that the facts would support a conclusion that the wife did not "freely and voluntarily" sign the preliminary agreement. Roberts v.Roberts, 802 So.2d at 234.
In Brown v. Brown, supra, this court distinguished the facts of that case from those of Roberts v. Roberts, supra, by pointing out that in Roberts v. Roberts this court had relied on principles associated with the ore tenus rule and had affirmed a judgment in which the trial court had found that the antenuptial agreement was invalidand unenforceable. In affirming the trial court's judgment declaring the antenuptial agreement in Brown v. Brown
to be valid and enforceable, this court noted that "[w]e are likewise bound by the ore tenus presumption in the present case." Brown v. Brown, ___ So.2d at ___ (citingTibbs v. Anderson, 580 So.2d 1337, 1339 (Ala. 1991)).
The wife in this case concedes that, given this state's case-law, the antenuptial agreement must be said to have been supported by consideration. See Barnhill v. Barnhill, *Page 428 386 So.2d at 751 ("Marriage may, under appropriate circumstances, be sufficient consideration for an antenuptial agreement," as may the proponent's relinquishment of rights in his or her spouse's estate); Brown v. Brown, supra (same). The wife argues, however, that she did not have knowledge of the value of the husband's estate at the time she entered into the antenuptial agreement, that she did not have competent counsel representing her at the time she entered into the antenuptial agreement, and that she did not have sufficient time to consider the antenuptial agreement and was coerced into signing it. In addressing those arguments, we must remember that when, as here, the trial court has received ore tenus evidence, its findings of fact are presumed to be correct and will not be reversed absent a showing that they are plainly and palpably wrong. Brown v. Brown, supra (citingTibbs v. Anderson, 580 So.2d at 1339). When the trial court fails to make specific factual findings, this court must assume that it made those findings necessary to support its judgment, unless those findings would be clearly erroneous.Roberts v. Roberts, 802 So.2d at 234.
In this case, the wife testified that while the parties were dating she understood that the husband had a substantial separate estate, that he owned his own business, and that he had a generous income. She testified that she did not object to the general theory of an antenuptial agreement and that, given his separate estate, she understood the husband's desire to have an antenuptial agreement. The husband's financial-disclosure form was attached to the February 12, 2001, antenuptial agreement. The wife testified that she believed the husband's financial disclosure for the purpose of drafting the antenuptial agreement had been "pretty correct" but that she could not be certain that it was correct.
A spouse does not have to have an exact knowledge of the other spouse's separate estate in order for an antenuptial agreement to be enforceable. "A general knowledge of the extent of the other party's estate is all that is necessary." Brown v.Brown, ___ So.2d at ___. See also Tibbs v.Anderson, 580 So.2d at 1340; Lemaster v. Dutton,694 So.2d at 1364; and Barnhill v. Barnhill, supra. The wife's testimony established that she understood the general nature and extent of the husband's estate, and such an understanding is all that is required. Therefore, we must reject her argument that the antenuptial agreement was invalid on the basis that she did not understand the nature of the husband's estate at the time she entered into the agreement. Based on the foregoing conclusion, we pretermit any discussion regarding the argument that is arguably implied in the wife's brief that her attorney had a duty to independently investigate and verify the parties' financial positions before advising her with regard to the antenuptial agreement.
We also find the wife's argument that she was not represented by competent counsel to be unpersuasive. The evidence indicates that the husband's attorney arranged for an attorney to represent and advise the wife with regard to the antenuptial agreement. In her brief on appeal the wife contends that the husband's attorney hired her attorney in an effort to mitigate "how bad his actions looked" and that her attorney had "zero opportunity to converse with [her] about her entitlements in [an antenuptial agreement]." She also contends that her attorney's conduct violated several ethical rules.
The wife takes issue with the fact that the husband's attorney located her attorney and arranged for him to represent her. However, the wife has not identified any *Page 429 
deficiency in that attorney's representation of her or in his advice to her (other than his failure to discharge a purported duty to investigate the nature of the husband's financial holdings, which argument we mentioned and rejected, supra). She has not alleged that, at the time she entered into the antenuptial agreement, she wanted another attorney to represent her. The wife does not contend and has not presented any evidence tending to indicate that she had her own attorney who could have advised her regarding the antenuptial agreement, that she asked for a different attorney to represent her, or that anyone prevented her from obtaining other counsel.
Further, the wife asserts that "any possibility" of her consulting her own attorney was prevented by what she characterizes as the "suddenness of the meeting" and her attorney's "aggressive style in assuming the role" of her attorney. There is nothing in the record to support either of those assertions. We note that the evidence was in dispute regarding whether the wife knew about the appointment to sign the antenuptial agreement on February 12, 2001. Regardless, the purported suddenness of the meeting cannot be said to be the fault of the attorney. The wife did not allege before the trial court and has presented no evidence tending to indicate that she regarded her attorney as having been aggressive in any manner with regard to his representation of her. The wife admitted that the attorney reviewed the antenuptial agreement with her and advised her against signing it. The wife repeatedly acknowledged during the ore tenus hearing that nothing prevented her from electing not to sign the antenuptial agreement and that she could have elected not to sign.
With regard to the specifics of the representation, the wife's attorney testified that it was his practice to review an antenuptial agreement before meeting a client and that it took him only 10 minutes to realize how detrimental to the wife's interests this particular antenuptial agreement would be. It is undisputed that the wife and her attorney conferred for some period regarding the antenuptial agreement, that the attorney read and explained the terms of the antenuptial agreement to the wife, that the wife's attorney attempted unsuccessfully to negotiate better terms, and that the wife signed the antenuptial agreement against the advice of her attorney.
In this case, it is clear that the wife had competent legal counsel and that she voluntarily chose to act against his advice. In Barnhill v. Barnhill, supra, this court affirmed the trial court's judgment determining that the antenuptial agreement was valid when the wife was advised by the husband's attorney. In Brown v. Brown, supra, the wife was unable to reach her attorney and signed the antenuptial agreement; this court affirmed the trial court's judgment determining that agreement to be enforceable, apparently based on the conclusion that because the wife had a general knowledge of the husband's estate, she understood what rights she was relinquishing by signing the antenuptial agreement. We have already held that the wife's general knowledge of the husband's estate was sufficient to apprise her of the nature of the rights she was relinquishing by signing the antenuptial agreement. See Brown v. Brown, supra. Accordingly, even assuming that the wife's argument that her attorney violated certain ethical rules was persuasive, the wife's testimony indicates that she understood the nature of the agreement, the nature of the husband's estate, and the effects of signing the antenuptial agreement. Given the facts of this case and the applicable case-law, we cannot *Page 430 
say that the wife has demonstrated reversible error with regard to this argument.
In her brief on appeal, the wife also asserts that the evidence supported a conclusion that she was coerced into signing the antenuptial agreement. The wife repeatedly states in her brief that she was stressed, anxious, and overwhelmed while considering the antenuptial agreement. The wife testified, however, that she did not believe that her attorney could have known that she was nervous because her demeanor was quiet and withdrawn. The February 12, 2001, meeting to sign the antenuptial agreement occurred only two days before the parties' wedding was scheduled. However, this court has upheld the validity of an antenuptial agreement that was executed only one day before a wedding. See Brown v. Brown, supra. Further, the record contains evidence to support the conclusion that the wife did know about the meeting to sign the antenuptial agreement in advance of that meeting. Also, the husband testified that after the parties signed the antenuptial agreement, the wife discussed the plans for the upcoming wedding with his attorney and his staff and that the wife was laughing at times during that conversation. Given the evidence presented to the trial court at the ore tenus hearing, we conclude that the trial court "must have determined that the atmosphere surrounding the execution of the antenuptial agreement in the present case was not so coercive as to warrant finding that the antenuptial agreement was unenforceable."Brown v. Brown, ___ So.2d at ___.
Although we are not unsympathetic to the wife's situation, we must conclude that, given the facts of this case and the applicable case-law, the trial court did not err in determining that the February 12, 2001, antenuptial agreement was valid and enforceable. Accordingly, we affirm the trial court's judgment.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.