This appeal involves the question of the amount of damages a party is entitled to recover for the breach of a "buy back" contract by a developer of an office condominium development. The buyers appeal, claiming that they were entitled to introduce evidence of the amount of money, including interest, they paid on the note (secured by a mortgage) they had executed to obtain the money for the purchase price for the condominium, and damages they allegedly suffered because they chose to invest in this development instead of in two others.
This case arises from the following facts:
The developers of an office condominium complex called Sun Plaza started construction of that development with the intent to build and sell office condominiums in an area called Wiregrass Commons, in Houston County. In furtherance of that goal, the developers entered into separate contracts for the sale of the individual condominium units.
The buyers entered into one of these contracts with Sun Plaza Development Company, and others, on May 21, 1986. An addendum to this contract was added on December 30, 1986, which specified that the developers would pay the buyers $500.00 rental per month for a period of one year if the buyers were unable to rent the condominium to anyone else, and also provided that the developers of Sun Plaza would, at the request of the buyers, buy back the condominium unit within one year of the purchase.[1]
The developers of Sun Plaza failed to pay the promised rental and failed to buy the condominium unit back from the buyers when they were requested to do so within the year permitted by the contract. The buyers sued. The developers admit that they breached the contract. The only issue between them is the amount of the damages. The buyers' argument is summed up in their reply brief, as follows:
 "The Trial Court did not allow Plaintiff to prove his incidental damages. The Trial Court did not allow Plaintiff to prove that the breach of the contract was willful, or that the Defendants had the ability to pay at the time of the breach. The Trial Court did not allow Plaintiff to prove that he suffered undue hardship or that he was required to pay his mortgage for more than two years. The Trial Court did not allow the Plaintiff to prove the condition he would have been in had the breach not occurred. These facts are *Page 1319 
evident by the rulings in this matter, by the denial of the Trial Court to allow this evidence to be introduced to the jury and by the fact that the Trial Court allowed only evidence that could be mathematically proven and evidence that was absolute and without any uncertainty as to the mathematical exactness. Plaintiff states that the absolute and unconditional rulings by [the trial] Court required no offer of proof and therefore Plaintiff is not pre-empted from raising the issues set forth in the Motion in Limine on appeal. Killingsworth v. Killingsworth, 283 Ala. 345, 354, 217 So.2d 57 (1968)."
At trial, the parties were able to agree on an amount computed by the judge as the amount of the damages that they were due according to the trial judge's view of the law regarding the amount of the damages that could be recovered. The buyers essentially assert that the trial court, by granting the developers' motion in limine, erred in not allowing the buyers to introduce into evidence facts pertaining to the extent of their damages. They specifically argue that the trial court prohibited them from introducing, in regard to the issue of damages, evidence of total debt incurred, financial hardship incurred, additional damages, strained personal life, reliance on family members, mental suffering, extra work, the developers' ability to pay, and lost profits from business opportunities that the buyers had been considering before they chose Sun Plaza as a form of investment.
The developers first assert that the buyers failed to preserve the claimed error for appeal because they did not offer proof of their claimed damages at the trial. The author of a treatise on Alabama evidence has stated the law as follows: "An offer of proof is required in order to isolate the error for appeal," and that "[i]t is this refusal at trial to accept the proffered evidence, not the granting of the motion in limine, that serves as the basis for reversible error." See C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981).
We have examined the colloquy between the trial court and the buyers concerning the motion in limine and we think that the two issues pertaining to damages discussed in the motion in limine were related to the amount paid on the note, including interest, that the buyers had to pay when they obtained financing for this investment, and to the possibility that other investment opportunities existed when the buyers chose to invest in the Sun Plaza development and that they lost the opportunity to invest in those by investing in the Sun Plaza development. The record indicates that the buyers attempted to introduce evidence concerning the payments of principal and interest that they had made on the note given to obtain financing for this project, but that they did not attempt to introduce evidence concerning the alternate investment possibilities.
The buyers rely on Killingsworth v. Killingsworth for the proposition that it would have been useless for them to make an offer of proof relating to the other two developments in which they were considering investing. In Killingsworth, this Court held:
 "[A]n offer of proof is not necessary, in order to preserve an objection to a ruling of exclusion for review, where the offer of proof would be a useless gesture by virtue of the attitude of the trial court, or where the court has ruled broadly that evidence of a particular class or type, or evidence in support of the theory or fact which the party is seeking to establish, is inadmissible."
283 Ala. 345, 354, 217 So.2d 57 (quoting 4 C.J.S. Appeal andError § 291).
In our review of the record, we find that the buyers, in accordance with Killingsworth, preserved the damages issues relating to the note payments and potential investment opportunities for our review. The trial court specifically ruled that evidence of the amount of payments the buyers had made before they requested the developers to buy back was not admissible.
The trial judge included in his computations of the damages the amount of money the buyers had borrowed to buy the condominium unit, interest on the money from the date of the breach, the rental value as stated in the contract, and the *Page 1320 
interest on the rent due. We conclude that the buyers were not entitled to recover any other damages for the breach. The buyers' assertion that the buyers and the sellers contemplated at the outset that the buyers had to borrow money to finance this investment and that they therefore are due the interest on this borrowed money as damages even though the interest accrued before the breach occurred, has no support in Alabama law so far as we can determine.
In Alabama, the rule regarding damages for the breach of a contract has often been stated. Damages should return the injured party to the position he would have been in had the contract been fully performed. Boyett v. Oakes, 518 So.2d 37
(Ala. 1987); Trimble v. Todd, 510 So.2d 810 (Ala. 1987); Cobbsv. Fred Burgos Const. Co., 477 So.2d 335 (Ala. 1985). These damages are generally those that flow naturally from the breach. Hutchinson v. South Montgomery Academy, 535 So.2d 189
(Ala.Civ.App. 1988); Chastain v. Baldwin Mut. Ins. Co.,495 So.2d 684 (Ala.Civ.App. 1986). However, the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance. Curacare, Inc. v. Pollack, 501 So.2d 470
(Ala.Civ.App.), writ quashed, 501 So.2d 472 (Ala. 1986). In this case, the buyers are entitled to be placed in the position they would have been in if the contract had not been breached. Therefore, the developers of Sun Plaza should be required to pay the rental value called for in the contract and should be required to "buy back" the condominium unit and to pay interest on the "buy back" price from the date that price should have been paid. This would place the buyers in the position they would have been in if the contract had not been breached. To require the developers to pay interest on a debt incurred before the breach occurred, however, would place on the developers a burden not provided for in the contract. In the case of Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala. 1982), this Court cited Amason v. First State Bank of Lineville,369 So.2d 547 (Ala. 1979), for the proposition that "payment of a debt that a person is under a pre-existing duty to pay is not a legal injury for which one may be recompensed." Although the buyers claim that the note they executed to secure the money to purchase the condominium was not a "pre-existing debt," we conclude that it was. Clearly, there were no terms in the agreement that entitled the buyers to recover the money they had paid on the note.
The buyers were awarded the contract price of the condominium plus interest on that price from the date of the breach. To charge the developers with interest accruing on the note before the breach occurred would be requiring them to pay interest on the buyers' pre-existing debt.
The buyers next contend that they should have been allowed to introduce evidence concerning the profits they claim they lost by investing in this project rather than in another investment opportunity. In Dickerson v. Finley, 158 Ala. 149, 48 So. 548
(1908), this Court held that profits are too remote and cannot be recovered when they are not the immediate fruits of the principal contract, but are dependent on collateral engagements not brought to the notice of the contracting parties.[2] In addition, this Court has held that compensatory damages for lost profits are not allowed if they are too speculative.Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105 (Ala. 1983);Paris v. Buckner Feed Mill, Inc., 279 Ala. 148, 182 So.2d 880
(1966). These cases are analogous to the one at hand. Profits from business ventures that could have been entered into had this one not been undertaken are too speculative to be considered when awarding damages.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES and HOUSTON, JJ., concur.
KENNEDY, J., concurs in the result.
[1] The addendum, in pertinent part, reads:
"Addendum No. 1: This entire contract and agreement is contingent upon the purchaser obtaining suitable financing. The purchaser shall obtain permanent financing within sixty (60) days from the date that the seller furnishes the purchaser with a certificate of occupancy.
"Addendum No. 2: The seller agrees to repurchase from the purchaser at any time that the purchaser should so desire within one (1) year, for the amount of the total investment involved. The one (1) year period shall begin on the date that the seller furnishes to the purchaser a certificate of occupancy.
"Addendum No. 3: The seller guarantees the purchaser rent in the amount of $500.00 per month for one year from the date of the purchaser closing his permanent financing."
[2] Lost profits are recoverable, of course, if they can be proved with reasonable certainty. Super Valu Stores, Inc. v. Peterson,506 So.2d 317 (Ala. 1987). *Page 1321