[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 424 
Tony Goolesby, Belinda Goolesby, and Buddy Goolesby, the defendants and counterclaimants in the underlying action, appeal from a judgment ordering a new trial on their counterclaim alleging breach of contract, as well as a judgment as a matter of law for the plaintiff as to the Goolesbys' remaining counterclaims. We affirm.
 I. Facts and Procedural History
The Goolesbys operated the San Rosa Farm in DeKalb County. In 1998, Tony and Buddy Goolesby decided to explore the possibility of raising chickens on the farm. Tony contacted Koch Farms, LLC, a Tennessee limited liability company involved in the chicken business.[2] In January 1999, Koch Farms issued a "letter of intent" stating that Koch Farms would award a breeder-hen contract (also referred to as a "grower contract") to the Goolesbys, conditioned on the Goolesbys' construction of two henhouses satisfactory to Koch Farms.
The Goolesbys built the henhouses, and on December 1, 1999, Buddy Goolesby and Koch Farms entered into a grower contract. Under the terms of the contract, Koch Farms provided Buddy with chickens, feed, and veterinary services. Koch Farms retained title to the chickens and had the express right to repossess the chickens under certain conditions. Buddy was responsible for raising the chickens, collecting eggs, and delivering the eggs to Koch Farms; Koch Farms would then pay Buddy set amounts based on the number of eggs delivered. In the ordinary course of business, Koch Farms would occasionally pick up a flock of chickens from the Goolesbys and replace it with a new flock. The contract was scheduled to terminate in December 2002.
On September 6, 2002, Koch Farms picked up the flock of chickens from the Goolesbys. On October 9, 2002, Koch Farms' breeder manager, Ted New, delivered a new flock to the Goolesbys. According to Koch Farms, New told Tony Goolesby that the new flock was delivered with the expectation that Koch Farms and the Goolesbys would enter into a new contract and that Koch Farms would bring the new contract by for signature in a few days. The Goolesbys deny this; they claim that they believed that the flock delivered on October 9, 2002, was delivered pursuant to the 1999 contract, which was still in effect on that date.
On October 11, 2002, New presented Tony Goolesby with a copy of a new contract. On October 14, 2002, Tony signed the contract; however, he made handwritten comments in the margin indicating his objections to some of the contract terms. New and Tony discussed the contract over the next several days, and Tony continued to object to certain terms in the contract he had signed. New then informed Tony *Page 426 
that Koch Farms would remove the flock unless Tony signed the contract with no modifications.
Within the next few days (the record and briefs are unclear as to the exact date), New attempted to remove the flock he had delivered on October 9, 2002, from the Goolesbys' farm. Tony Goolesby met New at the gate to the farm and refused to allow him to enter the farm or to remove the flock.
On October 17, 2002, Koch Farms filed in the DeKalb Circuit Court a complaint for the recovery of chattels in specie and a motion for writ of seizure, naming Tony Goolesby and San Rosa Farm as defendants.[3] The complaint also included a request for damages for breach of contract, relating to Koch Farms' expenses in removing the chickens from the Goolesbys' farm.
On October 21, 2002, the circuit court granted Koch Farms' motion for a writ of seizure and ordered the sheriff to seize the chickens. The same day, DeKalb County sheriff's deputies went to the Goolesbys' farm and removed the chickens. Although the parties dispute the details of what occurred that day, it is undisputed that there was a confrontation between Tony and Buddy Goolesby and the deputies that resulted in Tony and Buddy Goolesby's being arrested and charged with obstructing government operations. Those charges were eventually dropped.
On November 12, 2002, Tony Goolesby moved to join Belinda Goolesby and Buddy Goolesby as defendants in Koch Farms' action against him; the trial court granted the motion. On November 18, 2002, the Goolesbys answered Koch Farms' complaint and counterclaimed, alleging conversion, fraud, breach of contract, intentional interference with business relations, economic duress, abuse of civil process, and conspiracy.[4]
Also on November 18, 2002, the trial court held a hearing on a motion by Tony Goolesby to dissolve the writ of seizure. After taking evidence ore tenus, the trial court denied the motion to dissolve the writ of seizure. It issued a written order on November 20, 2002, in which it found that Koch Farms had a legitimate concern for the safety of the chickens and that the seizure complied with the requirements of Rule 64, Ala. R. Civ. P., which governs seizure of property prior to the entry of judgment. Although the Goolesbys dispute some of the findings of fact in the trial court's November 20 order, they do not argue that the trial court's legal conclusions were incorrect or that they are entitled to have the chickens that were removed pursuant to the writ of seizure returned.
In December 2004, the case went to trial on Koch Farms' claim of breach of contract and the Goolesbys' counterclaims. At the conclusion of Koch Farms' evidence, the trial court entered a judgment as a matter of law in favor of Belinda Goolesby on Koch Farms' breach-of-contract claim. After the Goolesbys presented their case, the trial court entered a judgment as a matter of law for Koch Farms on all of the Goolesbys' counterclaims except the one alleging breach of contract. The jury thus considered only Koch Farms' breach-of-contract claim against Tony and Buddy Goolesby and the Goolesbys' breach-of-contract counterclaim against Koch Farms. *Page 427 
The jury returned a verdict for Tony and Buddy Goolesby on Koch Farms' breach-of-contract claim. With respect to the Goolesbys' breach-of-contract counterclaim, the jury found that Koch Farms breached the grower contract when it repossessed the flock, and it awarded the Goolesbys $275,000 in damages. On December 14, 2004, the trial court entered a judgment on the jury verdict.
On December 21, 2004, the Goolesbys filed a motion to alter or amend the judgment, under Rule 59(e), Ala. R. Civ. P., in two respects. First, they asked the trial court to remove from the order language indicating that the jury's award was "for breach of contract" because the verdict form contained only the phrase "economic damages." Second, they asked the trial court to award prejudgment interest on the amount of the jury verdict. On January 12, 2005, Koch Farms filed a Rule 59(f), Ala. R. Civ. P., motion requesting a remittitur of the damages.
The trial court held a hearing on both posttrial motions. On March 11, 2005, it issued an order denying the Goolesbys' motion but granting Koch Farms' motion for a remittitur and reducing the damages award to $100,632.62. The Goolesbys refused to accept the remittitur, and on April 6, 2005, the trial court set aside the judgment in their favor and ordered a new trial on their breach-of-contract counterclaim. The Goolesbys appealed.
 II. Issues
On appeal, the Goolesbys present five issues:
1) Whether the trial court erred in granting Koch Farms' motion for a remittitur of damages;
2) Whether the trial court erred in denying their motion to amend the judgment to include prejudgment interest;
3) Whether the trial court erred in entering a judgment as a matter of law on the Goolesbys' counterclaims alleging conversion, intentional interference with business relations, and civil conspiracy;[5]
4) Whether the trial court erred in admitting as evidence the November 20, 2002, order denying Tony Goolesby's motion to dissolve the writ of seizure; and
5) Whether the trial court erred in instructing the jury that it could not consider "what occurred between the sheriff's deputies and Tony and Buddy Goolesby" in determining whether the Goolesbys were entitled to damages for mental anguish regarding their breach-of-contract counterclaim.
 III. Analysis A. Remittitur
The Goolesbys first challenge the trial court's decision to grant Koch Farms' motion for a remittitur of damages. A trial court has great discretion in determining whether to require a remittitur and its decision will be reversed only if the trial court exceeds that discretion. Dempsey v. Phelps,700 So.2d 1340, 1347 (Ala. 1997)("The trial court has much discretion in determining . . . whether to require a remittitur. . . ."). In this case, the trial court did not exceed its discretion by ordering a remittitur.
As a general rule, damages in a breach-of-contract action are "`that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.'" Ex parte Steadman, 812 So.2d 290, 295
(Ala. 2001) (quoting Brendle Fire Equip., *Page 428 Inc. v. Electronic Eng'rs, Inc., 454 So.2d 1032, 1034
(Ala.Civ.App. 1984)). This measure is commonly referred to as a party's "expectation interest." 24 Richard A. Lord,Williston on Contracts § 64:2, at 22 (4th ed.2002). In this case, the Goolesbys' breach-of-contract counterclaim was based on the claim that Koch Farms repossessed the flock without cause approximately two months before the contract executed in 1999 was to expire. Without objection from the Goolesbys, the trial court instructed the jury as follows:
 "The law says that damages for breach of a contract is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached. If you find that the Goolesbys are entitled to recover for breach of contract, then you would determine from the evidence what amount of money they could reasonably have been expected to make from the flock of chickens that was removed, or in other words, the value of the contract, and they would be entitled to a recovery in that amount."
After receiving this instruction, the jury awarded the Goolesbys $275,000 in damages.
In ruling on Koch Farms' motion for a remittitur, the trial court considered undisputed evidence indicating that, but for the breach, Koch Farms would have owed the Goolesbys additional payments under the contract, to a maximum of $110,632.32. The trial court also determined that, but for the breach, the Goolesbys would have incurred $10,000 in additional expenses in caring for the chickens. By subtracting the Goolesbys' additional expenses from the maximum additional income that the Goolesbys would have received under the contract, the trial court arrived at its figure of $100,632.32, an amount calculated to give the Goolesbys the entire benefit of their bargain.
The Goolesbys do not challenge the trial court's calculation of their direct damages. They argue, however, that they are entitled to consequential damages because, they say, the dispute with Koch Farms made it more difficult for them to enter into a grower contract with another supplier. The Goolesbys also state that they were forced to sell the farm at a loss and that they would have been able to demand a better price had it not been for Koch Farms' breaching the grower contract.
The trial court correctly excluded these claimed losses from the award of damages. Consequential damages must be "`capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the [damages] can be made. . . .'" Med PlusProps, v. Colcock Constr. Group, Inc., 628 So.2d 370,376-77 (Ala. 1993) (quoting Paris v. Buckner Feed Mill,Inc., 279 Ala. 148, 149, 182 So.2d 880, 881 (1966)). There was no reasonably certain basis on which to determine the likelihood that the Goolesbys would or would not be able to enter into another grower contract or what the terms of such a contract would be. See Garrett v. Sun Plaza Dev. Co.,580 So.2d 1317, 1320 (Ala. 1991) ("profits are too remote and cannot be recovered when they are not the immediate fruits of the principal contract, but are dependent on collateral engagements"). Nor could the trial court have determined with reasonable certainty to what degree, if any, the reduction in the value of the farm was the result of Koch Farms' breach.
The Goolesbys also argue that they were entitled to recover damages for their expenses in preparing to perform under the contract — including the cost of *Page 429 
purchasing additional land, building the henhouses, and hiring additional workers. Such damages, referred to as "reliance damages," are generally awarded in lieu of, not in addition to, expectation damages. See Lord, supra, § 64:2, at 30-32. If allowed to recover both the lost contract income and reliance damages, the Goolesbys would be placed in a better economic position than if there had been full performance of the grower contract. This is not the purpose of contract damages, and the trial court was correct in excluding reliance damages from its calculations. See Garrett,580 So.2d at 1320 ("the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance").
Moreover, the jury was instructed that the Goolesbys' lost income under the grower contract was the appropriate measure of damages. Because the Goolesbys failed to object to that instruction, it became the law of the case. Tolar Constr.,LLC v. Kean Elec. Co., 944 So.2d 138, 146 (Ala. 2006). The Goolesbys thus elected to recover on the basis of their expectation interest, and the trial court did not exceed its discretion by remitting the damages award accordingly.
The trial court correctly limited damages to the Goolesbys' lost net income under the grower contract, excluding consequential damages and damages based on the Goolesbys' investment expenditures in reliance on the contract. It therefore did not exceed its discretion by granting Koch Farms' motion for a remittitur or by ordering a new trial when the Goolesbys refused to accept the remittitur.
 B. Prejudgment Interest
Next, the Goolesbys argue that they were entitled to prejudgment interest. Prejudgment interest may be available in a breach-of-contract case, § 8-8-8, Ala. Code 1975, but only if damages were reasonably certain at the time of the breach.Continental Cas. Co. v. Plantation Pipe Line Co.,902 So.2d 36 (Ala. 2004).
On appeal, the Goolesbys argue that the amount of their loss was determinable at the time of breach. However, they neither identify that amount nor explain how the parties should have been able to determine it at the time of breach.[6] Moreover, the Goolesbys' own breach-of-contract counterclaim — which refers to "loss of profits and future damages" — contradicts the argument that the Goolesbys sought to recover a liquidated or certain sum. As a result, the trial court correctly denied the Goolesbys' motion for prejudgment interest.
 C. The Goolesbys' Other Counterclaims
The Goolesbys' third argument is that the trial court erred by entering a judgment as a matter of law for Koch Farms on the Goolesbys' counterclaims alleging conversion, intentional interference with business relations, and conspiracy to commit conversion and to intentionally interfere with business relations. For the reasons that follow, we disagree.
 1. Conversion
Conversion is a wrongful exercise of dominion over the property of another. Ott v. Fox, 362 So.2d 836, 839 *Page 430 
(Ala. 1978). In this case, it is undisputed that Koch Farms owned the chickens; the Goolesbys claim only a right of possession, not title. "Mere possession of a chattel . . . will give a right of action for any interference therewith,except as against the true owner. . . ." § 6-5-261, Ala. Code 1975 (emphasis added). Koch Farms was the true owner of the chickens. Under the express provisions of § 6-5-261, the Goolesbys could not state a conversion claim and the trial court properly entered a judgment as a matter of law for Koch Farms on that counterclaim.[7]
 2. Intentional Interference with Business Relations
The only business relationship at issue in this case is the Goolesbys' contractual relationship with Koch Farms. As a matter of law, Koch Farms cannot be liable for interfering with its own business relationship. Waddell Reed, Inc. v. UnitedInvestors Life Ins. Co., 875 So.2d 1143, 1154 (Ala. 2003) ("Clearly, a party to a contract or a business relationship cannot be liable for tortious interference with that contract or business relationship."). The Goolesbys argue that they presented evidence indicating that Ted New and Koch Foods, LLC, interfered with their business relationship with Koch Farms. However, the trial court has dismissed those parties from the action, and the Goolesbys did not appeal the dismissal. This issue is therefore moot.
 3. Conspiracy
A civil conspiracy cannot exist in the absence of an underlying tort. Avis Rent a Car Sys., Inc. v. Heilman,876 So.2d 1111, 1124 (Ala. 2003). Because the Goolesbys' counterclaims of conversion and intentional interference with business relations fail, the same is true of their counterclaim alleging that Koch Farms conspired to commit those torts.
 D. The November 20, 2002, Order
The Goolesbys next argue that the trial court erred by admitting as evidence the November 20, 2002, order denying Tony Goolesby's motion to dissolve the writ of seizure. However, the Goolesbys concede that they were not prejudiced by the admission of the order. Although the Goolesbys speculate that they might be prejudiced if the trial court admits the order during a new trial, that issue is not ripe for review. See Davis v.Hanson Aggregates Southeast, Inc., 952 So.2d 330, 341
(Ala. 2006).
 E. Jury Instruction on Damages for Mental Anguish
The Goolesbys' final argument is that the trial court erred by instructing the jury that it could not consider "what occurred between the sheriff's deputies and Tony and Buddy Goolesby" in determining whether the Goolesbys were entitled to mental-anguish damages on their breach-of-contract counterclaim; they ask the Court to determine whether the trial court's instruction was error, but only "if this case is to be remanded for a new trial." Because the Goolesbys do not argue that the alleged error entitles them to relief from an existing judgment and because it is impossible to predict whether (or under what circumstances) the trial *Page 431 
court will give the same instruction at a new trial, this argument asks for an advisory opinion, which the Court declines to issue. See Case v. Alabama State Bar, 939 So.2d 881,885 (Ala. 2006) (it is well established that the Alabama courts do not render purely advisory opinions).
 IV. Conclusion
The trial court correctly entered a judgment as a matter of law for Koch Farms on the Goolesbys' tort counterclaims and was within its discretion to order a remittitur of damages as to the Goolesbys' breach-of-contract counterclaim. Because the Goolesbys refused to accept the reduced award, a new trial on the breach-of-contract counterclaim is proper. The judgment of the trial court is affirmed.
AFFIRMED.
SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
PARKER, J., concurs in the result.
[2] In the trial court, the pleadings named a number of related business entities, most bearing some variant of the name "Koch Farms" or "Koch Foods." These included "Koch Foods," "Koch Foods, Inc.," "Koch Foods, LLC," "Koch Foods of Alabama, LLC," "Koch Poultry," "Koch Meats Co., Inc.," and "Koch Farms, LLC." However, as part of its judgment, the trial court dismissed all parties except Koch Farms, LLC, and the Goolesbys have not challenged the dismissal on appeal. As a result, Koch Farms, LLC, is the sole appellee.
[3] "San Rosa Farm" is a trade name, not a legal entity; Koch Farms accordingly has abandoned its claims against San Rosa Farm.
[4] Buddy Goolesby eventually retained separate counsel and filed his own counterclaim. In all material respects, however, it is identical to the counterclaim filed by the other defendants.
[5] The Goolesbys do not challenge the trial court's decision with respect to their allegations of fraud, economic duress, or abuse of process.
[6] It is true that the trial court used a seemingly precise figure to determine the Goolesbys' loss of income caused by the breach. However, the trial court's order makes clear that it chose the maximum of a range of values. Specifically, the order states: "The evidence was in conflict as to the economic damages suffered by the Goolesbys but the maximum sum that Koch [Farms] could have owed them under the contract was $110,632.32." The trial court thus adopted the figure most favorable to the Goolesbys, without attempting a more precise determination of the actual damages.
[7] The Goolesbys cite Empiregas, Inc. of Gadsden v.Geary, 431 So.2d 1258 (Ala. 1983), for the proposition that an action for conversion will lie against the true owner. However, Empiregas did not address the effect of §6-5-261, and the plain language of that statute bars a conversion claim against a true owner. Koch Farms does not ask us to overrule Empiregas, and this Court is reluctant to overrule a prior case when the parties have not asked us to do so.