689 So.2d 32 (1997)
Anthony J. FANT
v.
CHAMPION AVIATION, INC.
CHAMPION AVIATION, INC.
v.
Anthony J. FANT.
1951013, 1951119.
Supreme Court of Alabama.
January 31, 1997.
*33 John M. Johnson, Wynn M. Shuford and Madeline H. Haikala of Lightfoot, Franklin *34 & White, L.L.C., Birmingham, for Appellant/Cross-Appellee.
David M. Wilson of Janecky, Newell, Potts, Wells & Wilson, Birmingham, for Appellee/Cross-Appellant.
KENNEDY, Justice.
Anthony J. Fant sued Champion Aviation, Inc. ("Champion"), and others, seeking damages based on claims of negligence, wantonness, fraud, and breach of contract. The fraud claims included claims alleging innocent misrepresentation, reckless misrepresentation, intentional misrepresentation, suppression, and deceit. All claims were submitted to the jury, which awarded Fant a general verdict of $51,011.79 in compensatory damages and $100,000 in punitive damages.
Champion filed a motion for JNOV, or in the alternative, remittitur or a new trial. The trial court granted the motion for a new trial, stating that it had "erred in charging the jury on all of the requested charges of fraud." Fant appeals from the grant of the new trial. Champion cross appeals from the denial of the JNOV.

Fant's Appeal1951013
Whether to grant a motion for a new trial is within the trial court's discretion, and the court's ruling on that question will not be reversed absent an abuse of that discretion. Colbert County-Northwest Alabama Healthcare Authority v. Nix, 678 So.2d 719 (Ala. 1995).
Fant's claims arise out of Champion's mechanical work on Fant's airplane. Champion sought out Fant's business. Fant hired Champion to remove his airplane engine, rebuild it, and replace it. When placing the propeller back on the airplane after installing the engine, the mechanic failed to properly adjust the torque on the propeller bolts. While the airplane was in flight, all but one of the bolts were sheared off and Fant had to make an emergency landing. Fant had substantial damage to his airplane.
Fant presented evidence that Champion was having financial difficulty when it sought out Fant's business. Fant also presented evidence that Champion mechanic Kevin Smith was to perform the installation. Smith, besides being an airframe and power plant mechanic, was an authorized inspector; he was to remove and replace the engine and conduct the annual inspection of the airplane. Before the engine was replaced, Smith had a disagreement with Champion over his salary and he subsequently resigned. However, Smith offered to complete the work on Fant's airplane. Champion's vice-president recommended to Champion's other officers that they allow Smith to complete the job, but they rejected this recommendation, apparently for financial reasons.
Champion hired Dan Boman, who was an airframe and plant mechanic. Boman had never been in charge of installing an engine, nor had he ever worked on the type of airplane Fant had. Boman so informed Champion's vice-president. Because Boman was not an authorized inspector, Champion hired Harold Cordle to handle the inspection.
When he tried to reattach the propeller to the airplane, Boman could not get the propeller to "line up." Boman used the instruction manual for the airplane, but did not telephone the manufacturer for assistance. Cordle happened to be at Champion's hangar while Boman was trying to reattach the propeller. Cordle placed the parts of the propeller in the proper order for reattachment and then Boman put the propeller back on the airplane.
Fant presented evidence that Boman did not know whether the propeller had been properly attached, that he did not know whether all the slip ring used to connect the propeller was in the proper location, and that he did not have the proper tools to tighten the nuts that attached the propeller to the airplane and did not know how tight to fasten the nuts. Boman testified that he improperly reused fiber locking nuts on the plane. Fant presented expert evidence that reusing the nuts was a dangerous practice in the airplane industry.
After Boman attached the propeller, he performed a 100-hour service on the airplane. He certified that the airplane complied with all of the service bulletins from the *35 manufacturer. However, there was evidence at trial that Boman falsified several entries in the service logbook. For example, Boman certified that he had installed a new circuit board during this service, as required by the manufacturer; in fact, however, he did not touch any circuit boards or electrical equipment on the airplane when he performed the service.
On July 27, 1994, while Fant and his pilot were returning to Birmingham from Minnesota, the airplane engine began to race wildly and the propeller system malfunctioned. The airplane lost altitude, shook violently, and spewed oil onto the windshield, blocking the pilot's view. When the plane landed, Fant discovered that the propeller was loose. A Federal Aviation Agency inspector and an authorized inspector for the manufacturer examined the airplane. They found that the propeller system had been improperly installed and that the improper installation had caused the accident.
The FAA inspector interviewed Boman after the accident. Boman told the investigator that he did not have the proper tools to tighten the bolts that attached the propeller to the airplane and that he had had to guess what the proper degree of tightness should be. The FAA inspector also testified that the slip ring was not in the right place. The FAA suspended Boman for four months.
Before the trial court instructed the jury, the court had the following two conversations with the attorneys concerning the fraud charges:
"The Court: I think you're saying you've got the whole kitchen and sink in there. Generally, suppression has to be a fiduciary relationship. Are you saying your claim is deceit, which is a form of fraud? I mean you've put every kind of fraud and that's what we're trying to figure out.
"Fant's attorney: Can I say one thing on that point, Judge? It is true that a duty to disclose arises under [Ala.Code 1975, § 6-5-102] under a confidential relationship. The section goes further than that. It says also or under the particular circumstances of the case. The cases are clear on that, that you don't necessarily have to have the confidential. Those aren't joint requirements, those are separate requirements. Under particular circumstances of the case dictate that a duty to disclose arises because somebody knows and doesn't tell somebody something and they act under a misrepresentation of facts, then a duty to disclose arises [sic].
"The Court: Let me ask you a question. Why would you risk your whole caseif you've got one type of fraud, why would you risk it in trying to do another one? I'm going to give you the choice. I'm going to charge on every fraud if that's what you want...."
(R.T. 695-696)
"The Court: John, really what I'm getting at is why do we have to go through all of the types of fraud when you've got either a representation that's innocent or intentional? And you've got a deceit. Doesn't that cover everything?
"Fant's attorney: "I'll tell you, Judge, what we were talking about over lunch. I'd like to go look at the cases. At one point we were talking about dropping the intentional misrepresentation and maybe the deceit too, and travel on a suppression theory. The thing that worries me about that is the representation that was made as a matter of law when they returned the plane to service.
"The Court: I don't have any problem with that [that] I can see. If they made that representation in the beginning, as you say they did, and alleged and got substantial evidence to that effect then yes it should go on that representation. I've got some testimony from your client that he relied on it. What I'm worried about is all these different frauds. I think you are going to cover innocent fraud or reckless fraud or intentional fraud or deceit. Doesn't that cover it really?
"Fant's attorney: Yes, sir.
"The Court: Is that all right to charge on that?
"Fant's attorney: Yes, sir.
"The Court: I'm going to let [Champion's attorney] argue his motion.

*36 "Champion's attorney: We move for a directed verdict on any count you feel our client should get.[1]
"The Court: Overruled.
"Fant's attorney: We're traveling on deceit and suppression?
"The Court: Not suppression usually. I thought we just said nowdidn't we agree that it was going to be innocent fraud, reckless fraud or intentional fraud and deceit because they did not tell you that didn'tI think deceit is better than suppression.
"Fant's attorney: I tell you what I'm uncomfortable about. I think under these circumstances with the facts changing and [a] dangerous piece of equipment like this, I think they had a duty to speak and they did not speak. They didn't reveal that the circumstances had changed, and [they] didn't reveal that they had an unqualified mechanic working on this airplane. And I'm uncomfortable having any count that brings that under its umbrella taken out of the complaint....
"The Court: I'll give it on suppression. Again, if you get a verdict, I am going to set it aside.
"Fant's attorney: I am confused, Judge.
"The Court: I can see the deceit. Deceit is where they had something that they should have told them about. I don't know. John, I just don't feel good with suppression.... Generally speaking, don't you have to have a fiduciary relationship to have suppression?...
"Fant's attorney: No, you don't. There is another charge that covers the duty to speak. I can cite you to it.... It's Alabama Pattern Jury Instruction 18.08.
"The Court: I am going to give it. You've got it. I'm going to give it if you want it."
(R.T. 900-908.)
The trial judge's order granting the new trial did not set out which fraud charges he believed were erroneously given, and the verdict was a general one; therefore, we do not know which of the alleged types of fraud the jury found. However, from the discussions set out above, it appears that the trial judge granted the new trial because he believed that there was no suppression and, therefore, that the jury instructions on suppression were given in error.[2]
Section 6-5-102, Ala.Code 1975, states: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
A duty to disclose arises either from a confidential relationship between the parties or from the particular facts in the case. Baker v. Bennett, 603 So.2d 928 (Ala. 1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993). Whether there was a duty to communicate is a question for the jury, which should consider the relationship of the parties, the value of the particular facts suppressed, and the relative knowledge of each party. Baker, supra.
Viewing the facts most favorable to Fant, as we are required to do, we conclude that there was evidence from which the jury could find a duty to disclose, and we conclude that the suppression charge was therefore proper. When Fant contracted with Champion, Smith was its mechanic and Fant believed that Smith was to work on his airplane. Champion hired Boman, who Champion knew had never been in charge of an engine installation on a propeller-type airplane. Champion knew that Boman had difficulty in reattaching the propeller to the plane. Champion allowed Boman to do much of his work unsupervised. The evidence indicated that, based on Champion's expertise and the knowledge of its mechanics, Fant relied on Champion to properly do the technical work on his airplane. There are obvious safety implications in allowing an airplane to be placed back in service as airworthy when Champion knew of the problems *37 Boman had in mounting the propeller of the airplane.
Accordingly, we reverse the order granting the new trial.

Champion's cross appeal1951119
As to the breach of contract claim, Champion argues that there was a lack of consideration on Fant's part, because, it says, Fant had not paid for the repairs when the accident occurred. Thus, it says, it was entitled to a JNOV on the contract claim.
The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement. Pinyan v. Community Bank, 644 So.2d 919 (Ala.1994). Consideration must be present when the contract is made. The requirement of consideration means that a gratuitous promise is not enforceable. Here, we have a promise to repair, given in exchange for a promise to pay, with both parties benefiting from the exchange of promises. The fact that the money had not been paid does not mean consideration was lacking. We note that it was shortly after the repairs were made that the accident occurred, and we find no merit to the argument that there was a lack of consideration. We conclude that the trial court properly denied a JNOV as to the contract claim.
As to the wantonness and fraud claims also, the trial court properly denied a JNOV. As discussed above, there was substantial evidence that Champion knew that Boman had never worked on a propeller-type airplane before and that he had difficulty in installing the propeller on Fant's airplane. There was substantial evidence that the accident was caused by a loose propeller. Also, Boman failed to disclose that he had reused fiber locking nuts to attach the propeller; reusing fiber locking nuts is a dangerous practice in the airplane industry. Further, Boman falsified records in completing the service on the plane.
Champion argues that the trial court gave an incorrect statement of the law to the jury during Champion's closing argument. Champion's attorney stated during his closing argument, in regard to punitive damages, that Fant was seeking to "punish this defendant for the benefit of the public and who benefits from that? They do. They get the money." (R.T. 973-74.) Fant objected. The trial court told the jury: "Ladies and Gentlemen, there are some changes in the law concerning damages and where that goes at this point. Currently it does not just go to the plaintiff. Part of that will go to the State of Alabama under the current law."
Champion did not object to the trial court's statement. It also failed to raise the argument in its post-judgment motion for a JNOV or, in the alternative, a new trial or remittitur. (C.R.129-32.) Therefore, this issue has not been preserved for appeal. Even if the issue had been preserved, we would conclude that the court's statement was a correct statement of the law when it was made.[3]
Accordingly, the order granting a new trial is reversed; the order denying Champion's JNOV motion is affirmed; and the case is remanded.
1951013REVERSED AND CASE REMANDED.
1951119AFFIRMED.
HOOPER, C.J., and ALMON, SHORES, and HOUSTON, JJ., concur.
COOK, J., concurs in the result.
MADDOX, J., concurs in part and dissents in part.
*38 MADDOX, Justice (concurring in part and dissenting in part).
I agree with that portion of the majority opinion affirming the denial of Champion's JNOV motion; however, I must dissent from that portion of the opinion reversing the grant of a new trial.
I do not believe the trial court abused its discretion when it granted Champion's motion for a new trial. I agree with the trial judge that the jury should not have been instructed on suppression. Like the trial court, I do not believe a fiduciary relationship existed between Fant and Champion; therefore, I think Champion was not under a duty to disclose. I would affirm the trial court's order granting Champion's motion for a new trial.
NOTES
[1] Champion's attorney had discussed the substance of his directed verdict motion immediately before this discussion.
[2] Note that neither party argues that the substance of the charge was erroneous. Rather, the argument is that the charge should not have been given at all.
[3] When it told the jury that part of a punitive damages award would go to the State, the trial court was referring to this Court's November 17, 1995, opinion in Life Ins. Co. of Georgia v. Johnson, No. 1940357. That opinion was the law during this trial. That opinion was later withdrawn on application for rehearing and a new opinion was released. 684 So.2d 685 (Ala.1996). On its review in that case, the United States Supreme Court reversed and remanded for this Court's reconsideration in light of BMW of North America, Inc. v. Gore, 517 U.S. ___, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). See Life Ins. Co. of Georgia v. Johnson, ___ U.S. ___, 117 S.Ct. 288, 136 L.Ed.2d 207 (1996).