BOLIN, Justice.
 

 Sharee Self, as the successor trustee of the revocable trust of Georgia B. Slaughter, appeals from the trial court’s summary judgment in favor of Bruce Slaughter and Barbara Slaughter Jones, which required Self, in her capacity as trustee, to transfer to Georgia B. Slaughter’s estate all assets held by the revocable trust.
 

 Facts and Procedural History
 

 Wright Slaughter and Georgia B. Slaughter (collectively referred to as the “Slaughters”) were married for 32 years. There were no children born of their marriage but each had children born of prior marriages. Wright’s four children included Bruce Slaughter, Rebecca Slaughter Norwood, Barbara Slaughter Jones, and Wright Slaughter III (“Buddy”). Georgia’s two children included Mike Self and Don Self.
 

 In 1998, the Slaughters had assets totaling approximately $1.2 million. The assets were apportioned as follows: Wright had assets totaling $664,464, Georgia had assets totaling $238,194, and they had joint assets totaling $347,229. Additionally, Georgia owned a policy of life insurance that insured Wright’s life for $415,986 and that named Georgia as the beneficiary.
 

 In 1998, the Slaughters sought estate-planning advice from attorney Harwell E. Coale, Jr. Coale recommended as part of the Slaughters’ estate plan the creation of two separate and equal estates in order to minimize estate taxes by the use of a credit-bypass trust. To this end various assets were transferred between Wright and Georgia so that each individual estate was approximately equal in value to the other. On June 1, 1998, Wright and Georgia executed identical wills that provided for a family-support trust upon the death of the first to die, with the surviving
 
 *783
 
 spouse being the lifetime beneficiary of the trust. Upon the death of the surviving spouse, the remaining assets of the family-support trust would be distributed to the Slaughters’ children as follows: 22% each to Wright’s children Bruce Slaughter, Rebecca Slaughter Norwood, and Barbara Slaughter Jones, and 17% each to Georgia’s children Don Self and Mike Self.
 
 [1]
 
 The wills provided that each spouse would be the other’s personal representative and that successor co-personal representatives would be Mike Self and Bruce Slaughter.
 

 On June 1, 1998, Wright also executed an irrevocable trust into which the life insurance policy with death benefits totaling $415,986 was transferred. Georgia was made the life beneficiary of the trust with the remainder being distributed to the Slaughters’ children in the same proportions as the remainder of the family-support trust assets was to be distributed under the wills.
 

 At the time the Slaughters executed their wills, Georgia also executed the following agreement:
 

 “I swear before God, the Court, and my husband that I will NOT change my Last Will and Testament executed on June 1, 1998, after my husband, Wright B. Slaughter, becomes physically or mentally ill or dies; and if I do change my said Will for any reason whatsoever, or if I marry again and change my said Will, that will be ample reason to break or disregard any future Will that I make and Harwell Coale will represent this Will in Court.”
 

 Wright executed a substantially identical agreement. Coale testified that the Slaughters presented these agreements to him in handwritten form and that he had the agreements typed and notarized. He stated that the Slaughters wanted to execute the agreements to ensure that the surviving spouse could not change his or her will after the other died.
 

 In January 2002, the Slaughters executed identical codicils to their 1998 wills. The Slaughters reduced Rebecca Slaughter Norwood’s share from 22% to 17% and increased Bruce Slaughter’s and Barbara Slaughter Jones’s shares to 24.5%. Georgia’s two children, Mike Self and Don Self, did not receive an increased share.
 

 In June 2002, the Slaughters again executed identical codicils to the 1998 wills. The purpose of the codicils was to assure that Georgia would receive monthly income from the family-support trust and to completely remove from the wills Wright’s daughter, Rebecca Slaughter Norwood. Pursuant to the codicils executed in June 2002, Rebecca’s 17% share was reallocated to Bruce Slaughter and Barbara Slaughter Jones so that their shares under the 1998 wills increased to 33% each. Georgia’s two children, Mike and Don, did not receive an increased share. Subsequent to the execution of the 1998 wills and the subsequent codicils, Wright began day-trading on the stock market and lost approximately $203,000 between 2000 to 2005.
 

 Wright died in November 2005. Wright’s will was admitted to probate, and his estate passed consistent with the terms of the will to fund the family-support trust for Georgia. Shortly after Wright’s death, Georgia discussed with Coale the possibility of changing her will because she felt that the way the assets were to be distributed under the will was unfair to her two children and to Wright’s son Buddy. Coa-le advised Georgia that it would be inappropriate for him to assist her in changing her will because of the agreement that she and Wright had executed in which they
 
 *784
 
 each agreed not to change or revoke their 1998 wills subsequent to the other’s death. Coale referred Georgia to attorney Greg Watts.
 

 In November 2005, Georgia, Mike Self, and Mike’s wife Sharee Self met with Watts to discuss Georgia’s will. Georgia informed Watts that the disposition of her estate under her will was not fair to her children and Buddy and that she wanted to change it. Watts recommended to Georgia, Mike, and Sharee that Georgia create a revocable trust that would own all of her assets and would provide for disposition of those assets to her children and Buddy upon her death. Georgia executed the Georgia B. Slaughter Revocable Trust on March 3, 2006. Pursuant to the terms of the revocable trust, Georgia’s children Mike and Don were to receive her residence, household effects, furniture, furnishings, silverware, chinaware, art, jewelry, automobiles, and other personal property in equal shares. The balance of the trust was to be distributed to Don, Mike, and Buddy,
 
 [2]
 
 each receiving 83 1/3%. All Georgia’s assets were transferred into the trust during March and April 2006. The effect of establishing the revocable trust and transferring Georgia’s assets into it was that there would be no assets to be distributed to the two of Wright’s children who were beneficiaries of Georgia’s 1998 will — Bruce and Barbara. Georgia died on April 13, 2006, shortly after executing the revocable trust. Her will was admitted to probate in July 2006.
 

 On August 11, 2006, Bruce Slaughter, individually and as the personal representative of Georgia’s estate, and Barbara Slaughter Jones, individually (collectively referred to hereinafter as “the personal representative”),
 
 [3]
 
 sued Sharee Self (“the trustee”) as the successor trustee
 
 [4]
 
 of the Georgia B. Slaughter Revocable Trust, seeking a judgment declaring that the transfer of assets into the trust was a nullity and that the assets purportedly transferred into the trust are the property of Georgia’s estate. The complaint also sought an attorney fee.
 

 On October 23, 2006, the trustee answered the complaint and asserted a counterclaim, seeking a judgment declaring 1) that the revocable trust is valid and enforceable because, she argued, the execution of the codicils in 2002 served as a revocation of any agreement that may have existed between Wright and Georgia not to change their wills and 2) that the dissipation by Wright of the assets of his estate constitutes an anticipatory breach of the agreement or a failure of consideration for the agreement not to change the wills.
 

 On January 12, 2007, the personal representative moved the trial court for a summary judgment. On March 1, 2007, the trustee amended her answer to add failure of consideration as an affirmative defense. The trustee also on that same day filed her motion in opposition to the personal representative’s motion for a summary judgment.
 

 Following a hearing, the trial court, on March 30, 2007, entered a summary judgment in favor of the personal representative, finding that the transfer of Georgia’s assets from her estate to the revocable
 
 *785
 
 trust breached the agreement executed by her and Wright that the latter of them to die would not change his or her will after the other’s death. The trial court ordered the trustee to transfer to Georgia’s estate all assets held in the revocable trust; ordered that all attorney fees and expenses be paid out of Mike Selfs and Don Selfs shares of Georgia’s estate; and denied the trustee’s counterclaim.
 

 Standard of Review
 

 This Court has stated the applicable standard of review as follows:
 

 “ ‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P.,
 
 Young v. La Quinta Inns, Inc.,
 
 682 So.2d 402 (Ala.1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party,
 
 Hurst v. Alabama Power Co.,
 
 675 So.2d 397 (Ala.1996),
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486 (Ala.1991); will accord the nonmoving party all reasonable favorable inferences from the evidence,
 
 Fuqua, supra, Aldridge v. Valley Steel Constr., Inc.,
 
 603 So.2d 981 (Ala.1992); and will resolve all reasonable doubts against the moving party,
 
 Hurst, supra, Ex parte Brislin,
 
 719 So.2d 185 (Ala.1998).
 

 “ ‘An appellate court reviewing a ruling on a motion for summary judgment will,
 
 de novo,
 
 apply these same standards applicable in the trial court.
 
 Fuqua, supra, Brislin, supra.
 
 Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion.
 
 Dynasty Corp. v. Alpha Resins Corp.,
 
 577 So.2d 1278 (Ala.1991),
 
 Boland v. Fort Rucker Nat’l Bank,
 
 599 So.2d 595 (Ala.1992),
 
 Rowe v. Isbell,
 
 599 So.2d 35 (Ala.1992).’ ”
 

 Ex parte Turner,
 
 840 So.2d 132, 135 (Ala.2002) (quoting
 
 Ex parte Rizk,
 
 791 So.2d 911, 912-13 (Ala.2000)).
 

 Discussion
 

 Contracts not to revoke a will or devise are enforceable under Alabama law. See § 43-8-250, Ala.Code 1975. In
 
 Humphries v. Whiteley,
 
 565 So.2d 96, 97 (Ala.1990), a husband and wife made reciprocal wills that contained the following provisions:
 

 “ ‘THIRD ITEM: At my death I hereby give, devise and bequeath all the rest and residue of my estate, both real and personal, wheresoever situate, unto my spouse in absolute fee simple.
 

 [[Image here]]
 

 “ ‘FIFTH ITEM: My spouse and I are executing our wills at or about the same time and such wills are intended to be and should be construed [as] contractual and reciprocal wills. Neither wills [sic] shall be subject to revocation by it’s [sic] maker without the consent of the other party.’ ”
 

 The husband and wife each had children from previous marriages. The wife’s will also contained the following provision:
 

 ‘“[I]n the event my said spouse shall predecease me, then in such event I give, devise and bequeath all my estate, both real and personal, wheresoever situate, of which I may die seized or possessed, or to which I may be or become entitled to have any interest or over which I may have any power of appointment, unto my children, Gwinnette Meads Bates and Travis Humphries, and my husband’s children, Morris W. Whiteley, Bobby Whiteley, David Whiteley and Lanny Whiteley, in equal shares, share and share alike, in absolute fee simple, per stirpes and not per capita.’ ”
 

 
 *786
 

 Humphries,
 
 565 So.2d at 97. The husband’s will contained a similar provision to leave all of his property to all of them children equally in the event that the wife died first.
 

 The husband predeceased the wife, and, under the terms of the husband’s will, she took title to all of their property. Subsequently, the wife began making gifts to her children only. By the time the wife died, the estate had been significantly reduced. The wife’s children filed a declaratory-judgment action to determine how the wife’s estate was to be handled. The husband’s children filed a counterclaim, seeking to set aside the gifts the wife had made to her children. The trial court entered a judgment in favor of the husband’s children and set aside the gifts.
 
 Id.
 

 In affirming the trial court’s decision, this Court quoted the following from the trial court’s findings of fact and conclusions of law:
 

 “ ‘ “ ‘The weight of authority is that a contract to devise does not prevent the making of gifts during the lifetime of the promisor; but such gifts must be reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract to devise, nor having such effect.’
 
 Skinner v. Rasche,
 
 165 Ky. 108, [112,] 176 S.W. 942, 944 [ (1915) ].” ’ ”
 

 Humphries,
 
 565 So.2d at 100 (quoting in turn
 
 Wagar v. Marshburn,
 
 241 Ala. 73, 78-79, 1 So.2d 303, 307 (1941)).
 

 In this case, it is clear from the record that the creation of the revocable trust and the transfer of Georgia’s assets into the trust were for the clear purpose of defeating the contract Wright and Georgia had entered into whereby each agreed not to change his or her 1998 will upon the other’s death. Georgia informed Watts in November 2005 that the disposition of her estate under her will was not fair to her children and Buddy and that she wanted to change it. Watts testified in his deposition as follows:
 

 “Q. [By Slaughter and Jones’s counsel:] All right. Looking back now at the November 28 memo, in the final paragraph on the first page you have the line: ‘Georgia Slaughter now believes that the disposition under her will does not treat her children fairly and desires to change her will.’ Did she explain to you her thought process as to why she felt it was not fair to her children?
 

 “A. That if — the first important thing was that when Rebecca Norwood and Buddy were not provided for, the share for her children should have been higher. She was also concerned at that time that her house would be included in this estate plan, and we had a specific discussion about her jewelry, which she regarded to be hers.
 

 “Q. The next sentence in that same paragraph you have the line: ‘Unfortunately, Harwell Coale also prepared a contract signed by each of Georgia and Wright Slaughter by which each of them agreed not to change or revoke their 1998 wills.’
 

 “A. Yes.
 

 “Q. Why was it unfortunate?
 

 “A. Because it was a problem to comply with what she wanted to do.
 

 “Q. It stood in the way, so to speak—
 

 “A. Yes.
 

 “Q. —of her desire to change her will?
 

 “A. Yes.
 

 [[Image here]]
 

 “Q. ... [C]an you tell me, Greg, what the subject matter of the paragraph, redacted paragraph, is?
 

 
 *787
 
 “A. Different means of accomplishing what she wanted to do without violating that contract.
 

 “Q. That’s fair enough. The next line that we have in the memo that’s not redacted is: ‘After an extended discussion, we determined that the cleanest approach would be for me to prepare an inter vivos revocable trust that would own all of [Georgia’s] assets and that would provide for disposition of her assets at her death.’
 

 [[Image here]]
 

 “Q. Why was using the inter vivos trust the cleanest approach?
 

 “A. It addressed her concerns across the board as opposed to other alternatives that would involve other alternatives, like payable-on-death designations or life estates in houses. To provide for what she wanted to do was to provide for her property to go to Mike, Don, and set up a trust for [Buddy]. ...”
 

 Watts also testified that he informed Georgia, Sharee, and Mike that agreements not to revoke or change a will were valid and enforceable agreements and that a challenge to the creation of the revocable trust and the transfer of Georgia’s assets into the trust was likely.
 

 The trustee testified in her deposition as follows:
 

 “Q. If the Revocable Trust is upheld, there won’t be any assets to pass under [Georgia’s] 1998 will, right?
 

 “A. That’s what I understand.
 

 “Q. And that was the intent, wasn’t it, in drafting a Revocable Trust, to have it, in effect, replace [Georgia’s] will?
 

 “A. Yes, I would think so.”
 

 Here, Georgia and Wright executed a valid and enforceable agreement by which the surviving spouse would not change or revoke his or her will following the other’s death. That agreement cannot be circumvented by the creation of the revocable trust and the transfer of Georgia’s assets into the trust when it is clear that the sole purpose for creating the revocable trust was to defeat the agreement not to change or revoke the 1998 wills executed by Wright and Georgia.
 

 The trustee argues, however, that the depletion by Wright of his separate estate by day-trading on the stock market constitutes a failure of consideration that renders unenforceable the agreement not to change the wills. We disagree. “Consideration must be present when the contract is made.”
 
 Fant v. Champion Aviation, Inc.,
 
 689 So.2d 32, 37 (Ala.1997). “The requirement of consideration means that a gratuitous promise is not enforceable.”
 
 Id.
 
 The failure of consideration is “ ‘the neglect, refusal and failure of one of the contracting parties to do, perform, or furnish, after making and entering into the contract, the consideration in substance and in fact agreed on.’ ” Le
 
 master v. Dutton,
 
 694 So.2d 1360, 1366 (Ala.Civ.App.1996) (quoting 17 C.J.S.
 
 Contracts
 
 § 129 (1963)). Additionally, a failure of consideration is “ ‘predicated on the happening of events which materially change the rights of the parties, which events were not within their contemplation at the time of the execution of the contract.’ ”
 
 Lemaster,
 
 694 So.2d at 1366 (quoting
 
 Contracts
 
 § 129).
 

 Wright supplied consideration for Georgia’s promise not to change her will when he transferred to Georgia a significant amount of assets titled solely in his name in order to create two separate and equal estates. Before the transfer of assets to Georgia, Wright had titled solely in his name $664,464 of the couple’s approximately $1.2 million in total assets (including jointly held assets and Georgia’s solely owned assets of $238,194). Thus, a transfer of assets by Wright to Georgia in order
 
 *788
 
 to create two separate and equal estates resulted in a significant reduction in the value of Wright’s individual estate. Additionally, Wright supplied consideration to Georgia in exchange for her promise not to change or revoke her will when upon his death the balance of his estate passed into the family-support trust for Georgia’s benefit.
 

 The trustee contends that the $203,000 diminution in Wright’s estate due to losses from day-trading materially altered the amount each child would receive under the wills and that that diminution could not have been contemplated by Georgia at the time she executed her will, the agreement not to change the will, and the codicils. On the contrary, the diminution of the parties’ assets was reasonably expected due to several considerations. A diminution of assets would be reasonably contemplated by Wright and Georgia because the couple had been retired for approximately seven years after the estate plan was put in place. Further, because the estate plan called for the creation of the family-support trust upon the death of the first spouse, it was easily within Wright’s and Georgia’s contemplation that the parties’ assets would be reduced because they would have been used for the support of the surviving spouse under the terms of the trust until the death of the surviving spouse. However, this aspect of diminution of the assets is ignored by the trustee in arguing failure of consideration. Rather, the trustee focuses solely on the investment losses suffered by Wright. However, it was certainly within contemplation that Wright, a retiree of significant wealth, would seek investment opportunities on the stock market and that both gains and losses could result from those investments. The assets could have easily increased had Wright been more successful at trading on the stock market. Accordingly, we conclude that there was no failure of the consideration given by Wright in exchange for Georgia’s executing the agreement not to change or revoke her will.
 

 The trustee next argues that Georgia agreed only not to
 
 change
 
 her will and that the inter vivos transfer of her assets into the revocable trust does not constitute a breach of the agreement
 
 not
 
 to
 
 change
 
 her will. Here, the parties did indeed use the word
 
 change
 
 in reaching the agreement at issue, and by creating the revocable trust and transferring the balance of her estate into the revocable trust Georgia did not technically work a
 
 change
 
 to her will. However, transferring the balance of her estate into the revocable trust had the effect of revoking her will, because upon her death there was nothing left in her estate to be distributed in accordance with the terms of her will. As discussed above, contracts not to revoke a will or devise are enforceable under Alabama law and inter vivos transfers— whether to individuals or trusts — cannot be used to circumvent such contracts. Indeed, “ ‘such gifts must be reasonable, absolute, bona fide, not testamentary in effect, and
 
 not made for the 'purpose of defeating the contract to devise, nor having such effect.’ Skinner v. Rasche,
 
 165 Ky. 108, [112,] 176 S.W. 942, 944 [ (1915) ].”
 
 Humphries,
 
 565 So.2d at 100 (emphasis added). There is a fundamental principle .of law that “one cannot do indirectly what one cannot do directly.”
 
 Blue Cross
 
 &
 
 Blue Shield of Alabama, Inc. v. Butler,
 
 630 So.2d 413, 416 (Ala.1993). See also
 
 Baldwin County v. Jenkins,
 
 494 So.2d 584, 589 (Ala.1986);
 
 Sanders v. Cabaniss,
 
 43 Ala. 173 (1869). Accordingly, we conclude that the transfer of the assets of Georgia’s estate into the revocable trust, which was created for the purpose of circumventing the terms of her will, constitutes a breach of the agreement not to change or revoke her will.
 

 
 *789
 
 The trastee next argues that the trial court erred in ordering that all attorney fees and expenses be paid out of Mike Selfs and Don Selfs shares of Georgia’s estate. The personal representative argued in its motion for a summary judgment that the transfer of assets from Georgia’s estate to the revocable trust should be set aside and that all attorney fees should be awarded out of Don Selfs and Mike Selfs shares of Georgia’s estate. The trustee argued in response only that genuine issues of material facts existed relating to the enforcement of the agreement not to change the wills and offered nothing in response to the personal representative’s argument in support of attorney fees and expenses. Additionally, following the entry of the summary judgment by the trial court, the trustee offered no opposition by way of a postjudgment motion to the trial court’s award of attorney fees and expenses. This Court has stated:
 

 “ ‘As a general rule, an appellate court will not reverse a summary judgment on a ground not presented in the trial court.
 

 “ ‘ “[T]he appellate court can consider an argument
 
 against
 
 the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.”
 

 “
 
 ‘Ex parte Ryals,
 
 773 So.2d 1011, 1013 (Ala.2000) (citing
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409 (Ala.1992)). Put another way, on an appeal from a summary judgment, this Court cannot hold the trial court in error on the basis of arguments made for the first time on appeal. See
 
 Barnett v. Funding Plus of America, Inc.,
 
 740 So.2d 1069 (Ala.1999);
 
 West Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc.,
 
 619 So.2d 1290 (Ala.1993).’ ”
 

 Cain v. Howorth,
 
 877 So.2d 566, 578 (Ala.2003) (quoting
 
 Ex parte Elba Gen. Hosp. & Nursing Home, Inc.,
 
 828 So.2d 308, 311-12 (Ala.2001)). Accordingly, because the trustee failed to submit to the trial court her arguments in opposition to the award of attorney fees and expenses, we will not address those arguments, which are presented for the first time on appeal.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and MURDOCK, JJ„ concur.
 

 [1]
 

 . No provision was made in these two wills for Buddy Slaughter because Buddy was disabled, on government assistance, and incapable of handling assets. •
 

 [2]
 

 . Buddy’s share was not to be distributed to him but was to be held in trust by the trustee of the revocable trust for his benefit during his lifetime.
 

 [3]
 

 . Mike Self is a co-personal representative of Georgia's estate and agreed that he would not participate in, but would not oppose the filing of, the declaratory-judgment action by the personal representative.
 

 [4]
 

 . Georgia was the trustee of her revocable trust until her death; Sharee was then named as the successor trustee.